BAR L RANCH, INC., Plaintiff and Defendant in Intervention,

v.

Robert L. PHINNEY, Defendant,

v.

UNITED STATES of America, Plaintiff in Intervention.

Civ. A. No. 66-H-367.

United States District Court
S. D. Texas,
Houston Division.

Jan. 30, 1969.

Dougal C. Pope, Houston, Tex., for plaintiff.

Mitchell Rogovin, Asst. Atty. Gen., John O. Jones and Leonard B. Tatar, Attys., Dept. of Justice, Fort Worth, Tex., and Morton L. Susman, U. S. Atty., Houston, Tex., for defendant.

*Memorandum:*

INGRAHAM, District Judge.

This is a refund suit brought by Bar L Ranch, Inc., for the recovery of a delinquency penalty in the amount of $403.-12. The penalty was incurred as a result of the late filing of plaintiff's income tax return for its fiscal year ending April 30, 1962. The United States intervened, seeking judgment for an additional $25,-515.37 in tax, penalty, and interest allegedly due from the plaintiff for the same fiscal year.

A trial of the case before the court, sitting without a jury, was held on March 15, 1967. By memorandum dated May 17, 1967, the court held that the plaintiff was not entitled to recover the $403.12 penalty imposed for filing its return late. The court further held that the Commissioner's assessment of the additional tax and penalty was valid and timely. Bar L Ranch, Inc. v. Phinney, 272 F.Supp. 249 (S.D.Tex.1968). The decision was affirmed and remanded for a determination of the amount of the deficiency. Bar L Ranch, Inc. v. Phinney, 400 F.2d 90 (5 C.A.1968). A nonjury trial on that issue was held on November 18, 1968. Having heard the evidence presented at the trial and having considered the briefs of counsel, the court enters this memo-

randum, the following to constitute Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52.

## I.

·The facts are stipulated. Plaintiff Bar L is a Texas corporation wholly owned and controlled by Earl N. Lightfoot. Mr. Lightfoot also owns all the outstanding capital stock of Earl N. Lightfoot Paving Co. (Paving), which in turn owns all the stock of Earl Lightfoot Construction Corp. (Construction).

In the course of its business, Paving became heavily indebted to John Young Company, Inc., a supplier of paving materials. Consequently, on February 26, 1960, Paving and Lightfoot, individually, executed a promissory note for $97,059.-03 to Young, secured by a chattel mortgage on Paving's equipment. Paving defaulted on its payments to Young, and on March 14, 1962, Young filed suit against Paving and Lightfoot for $118,-100.07, representing the balance of $66,-313.54 owed on the promissory note and $51,786.53 owed on open accounts.

On April 27, 1962, Lightfoot caused plaintiff Bar L to transfer its only asset, 51.576 acres of land and improvements, to Young. In exchange, Young transferred to Bar L the indebtedness on the promissory note and on the open accounts, but excluded therefrom accounts totaling $16,550.17. The amount excluded equaled the outstanding mortgage on the acreage, which Young assumed. As a result of the foregoing transactions, Young dismissed its lawsuit against Paving and Lightfoot.

The issue in this case centers around Bar L's treatment of the exchange of land for the note and accounts on its income tax return for the fiscal year ending April 30, 1962.

The adjusted basis of the land transferred to Young was $45,920.74. On its return, plaintiff reported the transaction as a sale of its land at a price of $50,000, resulting in a reported capital gain of $4,353.86. Plaintiff states that the selling price of $50,000 was fixed by its accountant as being what he considered a fair price and to show a small profit on the sale.

The Commissioner, in its statutory notice of deficiency, computed the increase in plaintiff's taxable capital gain on the transaction as follows:

| | |
|---|---:|
| Value of note and account received | $101,549.90 |
| Liability on property assumed by purchaser | 16,550.17 |
| Amount realized | $118,100.07 |
| Adjusted basis of property sold | 45,920.74 |
| Capital gain corrected | $ 72,179.33 |
| Capital gain reported | 4,353.86 |
| Capital gain increased | $ 67,825.47 |

The increase in capital gain resulted in an alleged tax deficiency of $16,956.36, which with penalties and interest totals the $25,515.37 in controversy in this suit.

## II.

The only issue in this case is whether the value of the note and accounts received by the plaintiff should be valued at their face value ($118,100.-07) as the defendant contends, or whether they should be valued at a figure much less than face value, as the plaintiff contends.[1] As a general rule, the Commissioner's determination is prima facie correct; the burden of overcoming the pre-

1. A corollary contention, which may be disposed of quickly, is plaintiff's claim that the Commissioner's determination was computed in an arbitrary manner, shifting the burden of proof to the defendant. The court finds that the determination was neither arbitrary nor unreasonable. Although the valuation might prove to be erroneous, assigning the note and accounts their face value is inarguably logical. See Anderson v. Commissioner of Internal Revenue, 250 F.2d 242, 248–249 (5 CA1957), cert. denied, 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 844 (1958); Williams v. Commissioner of Internal Revenue, 45 F.2d 61 (5 CA1930). Indeed, in light of the patently plug figure of $33,449.83 the plaintiff assigned to the note and account to reach the $50,000 figure it arbitrarily assigned to the value of the land, the assertion that defendant's figure is arbitrary borders on sheer gall.

sumption is on the plaintiff.[2] In addition, it is settled that not only must the plaintiff establish a basis for judgment in its favor, it must also establish the correct value upon which the tax should have been assessed.[3] Where the issue is fair market value, the plaintiff must show the proper market value of the subject of the tax, or that it had no value at all.[4]

The amount realized from a sale or other disposition of property "is the sum of any money received plus the fair market value of any property (other than money) received. The fair market value of property is a question of fact, but only in rare and extraordinary cases will property be considered to have no fair market value." Treas.Reg. Sec. 1.1001–1(a) (1968). The fact issue of valuation "is necessarily an approximation arrived at by the trial court on such factors as reasonably bear on determining the price which would reasonably be paid by the hypothetical willing purchaser to the equally hypothetical willing seller who is under no compulsion to sell. It is not necessary that the value arrived at by the trial court be a figure as to which there is specific testimony, if it is within the range of figures that may properly be deduced from the evidence. Archer v. Commissioner of Internal Revenue, 5 Cir., 227 F.2d 270, 273. Cf. Burford-Toothaker Tractor Co. v. Commissioner of Internal Revenue, 5 Cir., 192 F.2d 633, 635." Anderson v. Commissioner, 250 F. 2d 242, 249 (5 C.A.1957), cert. denied, 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 844 (1958).

■ With the foregoing in mind, inquiry now turns to whether the plaintiff has discharged its burden of proof as to what amount it considers the correct market value of the note and accounts should be. The court is not persuaded that it has.

Plaintiff's argument is based on its assertion that the selling price of the land transferred to Young was not in excess of $50,000. Plaintiff evidently considers this to be important because that amount, less the balance of the mortgage, leaves the $33,449.83 figure it contends represents the value of the note and accounts. Unfortunately, the plaintiff made its computations completely backward. Since Section 1001(b), Internal Revenue Code of 1954, contemplates the value of property *received* by the taxpayer, plaintiff's first step should have been to discern the fair market value of the note and accounts. By then adding the lien on the land to that figure, it would have arrived at a more reasonable selling price to assign to the land. But the selling price is irrelevant. Only two amounts—the land's adjusted basis (which is stipulated) and the value of the note and accounts—are material.

The court must confess that a determination as to the correctness or erroneousness of the Commissioner's decision is difficult, primarily because the court was exposed to precious little testimony going to the value of the note and accounts. While the irrelevant subject of the fair market value of the land was explored at length, counsel seemed to explore the pertinent issue of the value of the note and accounts only in broad, general terms. One apparently cogent factor did emerge, however, and fortunately received some attention. That factor involved the sol-

2. Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623 (1935); Piper v. Commissioner of Internal Revenue, 84 F.2d 560, 561 (5 CA1936); Michelin Corp. v. McMahon, 137 F.Supp. 798, 802 (S.D.N.Y.1956).

3. Helvering v. Taylor, supra; United States v. Anderson, 269 U.S. 422, 46 S. Ct. 131, 70 L.Ed. 347 (1926); David v. Phinney, 350 F.2d 371, 377 (5 CA1965), cert. denied, 382 U.S. 983, 86 S.Ct. 560, 15 L.Ed.2d 473 (1966).

4. Burnet v. Houston, 283 U.S. 223, 227, 51 S.Ct. 413, 75 L.Ed. 991 (1931); Alvary v. United States, 302 F.2d 790, 795 (2 CA1962); Commissioner of Internal Revenue v. Swenson, 56 F.2d 544, 548 (5 CA), cert. denied, 287 U.S. 618, 53 S.Ct. 19, 77 L.Ed. 537 (1932); South Carolina Nat'l Bank v. McLeod, 256 F.Supp. 913, 915 (D.S.C.1966); see 10 Mertens Law of Federal Income Taxation, Sec. 58A.35 (1968).

vency of Mr. Lightfoot and his companies.

Plaintiff contends that both Paving and Mr. Lightfoot were insolvent on the date of the transaction. Consequently, it asserts, a purchaser being under no compulsion to buy, would not have paid even the $33,449.82 Paving assigned to the note and accounts, much less face value. The balance sheets of Paving, Construction, and Mr. Lightfoot tend to bear out the assertion. They reveal that on April 30, 1962, net liabilities exceeded net assets by $32,692.94 on Paving's balance sheet, and by $30,647.82 on Construction's balance sheet. Mr. Lightfoot's personal balance sheet reflects a net worth of $26,998.78, but since he was and is personally liable for the debts of the two corporations, it could be fairly said that he and his companies were insolvent. From this plaintiff concludes that the note and accounts were for all practical purposes worthless; valuing them at $33,449.83 was more than fair to the government. The court believes, however, that whether it was a fair amount or not, the figure has no basis in logic or reason. Plaintiff's argument for insolvency as a basis for a low fair market value is acceptable in theory, but it falls short. Simply agreeing that the companies were insolvent does nothing to discredit a higher market value in the absence of a reliable figure from the plaintiff or other evidence to support a lower value. Plaintiff was anxious to prove a low market value on the land; an expert witness offering a reliable appraisal of the note and accounts would have been more helpful.

The fact that the companies were insolvent is compelling enough, however, to bring the defendant's figure into question. Assuming, therefore, that the plaintiff's argument has no rational basis, and that the government's proposed amount is excessive, the question becomes whether there is evidence to support a fair market value somewhere between the two figures. The defendant has presented one argument for valuing the note and accounts at face value which more properly supports a middle figure. Defendant asserts that since the note was secured by a chattel mortgage on Paving's equipment, having a value of $48,627.95, the note's value was at least that much. Defendant also claims that the value of Construction's equipment, $25,893.46, added to the foregoing figure, exceeds the $66,313.54 balance owed on the promissory note by a substantial margin.

The argument is persuasive, but only to a point. Young's chattel mortgage was secured by Paving's equipment only. Young could not have reached Construction's assets in preference to other creditors. In addition, it is questionable whether Paving's equipment was not subject to other encumbrances, possibly superior to Young's. For the court to hold that the note was worth at least the value of the equipment would be to indulge in speculation. Similar attempts to discern the proper face value from "the range of figures that may properly be deduced from the evidence," Anderson v. Commissioner, supra, are even more speculative. There is, in effect, no range of figures from which a reasonable value may be drawn.

The court is thus faced with the necessity of deciding the proper face value of the note and accounts from either (1) the plaintiff's figure, $33,449.82; (2) the defendant's figure, $118,100.07; or (3) some figure in between. The third is unacceptable simply because the testimony and briefs are bereft of any evidence or argument which would support a reasonable determination. The first is unpersuasive for reasons heretofore stated; it is a plug figure and is not based in any way on a rational computation of face value. This leaves the second amount— the government's. As questionable as it is, it is by far the only amount having some reasonable basis in the evidence. More importantly, however, the government's figure must prevail because the plaintiff has failed to sustain its burden of proving that the amount is wrong and that its amount is correct.

For the foregoing reasons, the plaintiff's complaint will be dismissed with prejudice, and the United States, intervenor, shall be entitled to judgment against the plaintiff for the amount of $25,515.37 plus interest at six percent from date of judgment until paid.