BAR L RANCH, INC., Plaintiff and Defendant in Intervention-Appellant,

v.

Robert L. PHINNEY, Defendant-Appellee,

United States of America, Plaintiff in Intervention-Appellee.

No. 27836.

United States Court of Appeals, Fifth Circuit.

May 14, 1970.

Dougal C. Pope, Houston, Tex., for appellant.

John O. Jones, Atty., Tax Div., U. S. Dept. of Justice, Ft. Worth, Tex., Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., Johnnie M. Walters, Asst. Atty. Gen., Karl Schmeidler, Lee A. Jackson, Jonathan S. Cohen, Kenneth L. Gross, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellees.

Before THORNBERRY, DYER and CLARK, Circuit Judges.

DYER, Circuit Judge.

In reporting the amount of capital gain realized in a transaction in which it received a note and accounts receivable having a combined face value of $118,-

100.07, taxpayer valued the note and accounts at substantially below their face. The Commissioner of Internal Revenue determined they should be valued at their face value. The District Court found that the taxpayer failed to show the incorrectness of the Commissioner's assessment and the correct value upon which the tax should have been assessed and entered judgment for the Government. We reverse and remand.

Bar L Ranch sued for refund of a delinquency penalty in the amount of $403.12 which had been incurred as a result of the late filing of its income tax return for its fiscal year ending April 30, 1962. The United States intervened, seeking judgment for an additional $25,-515.37 in tax, penalty, and interest allegedly due from Bar L for the same fiscal year.

The District Court held that Bar L was not entitled to recover the $403.12 penalty imposed for late filing of its return. It further held that the Commissioner's assessment of the additional tax and penalty was valid and timely. Bar L Ranch, Inc. v. Phinney, S.D. Tex. 1967, 272 F.Supp. 249. This Court affirmed and remanded for a determination of the amount of deficiency. Bar L Ranch, Inc. v. Phinney, 5 Cir. 1968, 400 F.2d 90.

A nonjury trial was held on that issue and the District Court sustained the Government's position that the note and accounts receivable should be valued at their combined face value. 300 F.Supp. 839. This appeal followed.

The facts concerning the amount of the deficiency were largely stipulated.[1] Bar L Ranch is a Texas corporation wholly owned and controlled by Earl N. Lightfoot. Mr. Lightfoot also owns all the outstanding capital stock of Earl N. Lightfoot Paving Co. (Paving Co.), which in turn owns all the stock of Earl Lightfoot Construction Corp.

In the course of its business Paving Co. became heavily indebted to John Young Company (Young), a supplier of paving materials. Consequently, on February 26, 1960, Paving Co. and Lightfoot, individually, executed a promissory note for $97,059.03 to Young, secured by a chattel mortgage on Paving Co.'s equipment. Paving Co. defaulted on its payment to Young, and in March, 1962, Young filed suit against Paving Co. and Lightfoot individually for $118,100.07, representing the balance of $66,313.54 owed on the promissory note and $51,-786.53 owed on open accounts. Mr. Lightfoot was also personally liable on the open accounts.

About six weeks later, in April, 1962, Lightfoot caused Bar L Ranch, the taxpayer, to transfer its only asset, 51.576 acres of land and improvements, to Young. In exchange, Young transferred to Bar L the indebtedness on the promissory note and the open accounts, but excluded therefrom accounts totaling $16,-550.17. The amount so excluded equaled the outstanding mortgage on the acreage, which Young assumed. As a result of these transactions, Young dismissed its lawsuit against Paving Co. and Lightfoot.[2]

The adjusted basis of the land transferred by Bar L to Young was $45,920.74. On its tax return for the fiscal year ending April 30, 1962, Bar L reported the transaction as a sale of its land at a price of $50,000.00, resulting in a reported capital gain of $4,353.86.[3] Bar L's account-

---

1. The statement of facts is pilfered from the District Court opinion.

2. The transaction between Young and Lightfoot is not attacked and no attempt is made to treat Lightfoot and his companies as other than separate entities. Of course, Paving Co. was required to report the cancellation of indebtedness to Young as income under Int.Rev.Code of 1954, § 61. The record reflects that this was done.

3. The actual figure which results when the adjusted basis ($45,920.74) is subtracted from the selling price fixed by Bar L's accountant ($50,000.00) is $4,079.26. However, the parties stipulated that the reported capital gain was $4,353.86 and this figure was accepted by the District Court.

ant testified that the $50,000.00 selling price was fixed by him as being what he considered a fair price and to show a small profit on the sale.

In his statutory notice of deficiency the Commissioner computed the increase in Bar L's taxable gain on the transaction as follows:

| | |
|---|---|
| Value of note and account received | $101,549.90 |
| Liability on property assumed by purchaser | 16,550.17 |
| Amount realized | $118,100.07 |
| Adjusted basis of property sold | 45,920.74 |
| Capital gain corrected | $ 72,179.33 |
| Capital gain reported | 4,353.86 |
| Capital gain increased | $ 67,825.47 |

The increase in capital gain resulted in an alleged tax deficiency of $16,956.36, which, with penalties and interest, totals the $25,515.37 in controversy in this suit.

The question for determination by the District Court was whether the note and accounts receivable should be valued at their face value ($118,100.07) or at a much lower figure as contended by Bar L.

The District Court held that the burden was on the taxpayer not only to show that the Commissioner's determination was computed in an arbitrary manner, but also to establish the correct value upon which the tax should have been assessed. The Court then went on to hold that Bar L had not met either of these burdens.

 We think the double-pronged burden of proof exacted of the taxpayer by the District Court was too stringent in view of the nature of the proceedings here involved. Of course we agree with the District Court that the Commissioner's determination of a deficiency is prima facie correct and that the burden is on the taxpayer to prove to the contrary. *E.g.,* Helvering v. Taylor, 1935,

293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623; Cummings v. Commissioner, 5 Cir. 1969, 410 F.2d 675; United States v. Lease, 2 Cir. 1965, 346 F.2d 696; Price v. United States, 5 Cir. 1964, 335 F.2d 671. And the law is settled that in a Tax Court proceeding for redetermination of a deficiency the taxpayer has met his burden and is entitled to prevail after establishing that the determination is arbitrary, but that in a suit for refund in the District Court the taxpayer must show, in addition to the arbitrariness of the Commissioner's determination, exactly how much the Government has unjustly withheld from him before he can prevail. *E.g.,* Helvering v. Taylor, *supra;* Bicknell v. United States, 5 Cir. 1970, 422 F.2d 1055 [February 16, 1970]. In the instant case, however, the taxpayer did not file a petition in the Tax Court for redetermination of the deficiency nor did taxpayer pay the deficiency and sue for refund in the District Court. Instead, as to the amount in controversy on this appeal, the taxpayer sat back and waited for the Government to institute (by way of counterclaim) a suit for collection. It was not until that point that taxpayer challenged the correctness of the Commissioner's determination.

We have found only one Court of Appeals case, United States v. Lease, 2 Cir. 1965, 346 F.2d 696, which discusses the burden of proof on a taxpayer who challenges the correctness of a tax assessment as a defense in a collection suit. The Second Circuit concluded there that the taxpayer has the easier burden of proof to show only that the Government computations are arbitrary. The Court said the burden is then upon the Government to show whether any deficiency exists, and, if so, in what amount; it is not incumbent upon the taxpayer to prove the correct amount of the tax which he did owe or the correctness of the item concerned. *Accord,* Spivak v. United States, S.D.N.Y.1966, 254 F.Supp. 517, 525, aff'd, 370 F.2d 612, cert. denied, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (which, like the instant case, involved a counterclaim by the Government).

Requiring taxpayers in collection suits to meet the more rigorous burden of proof demanded in refund cases would not be warranted by the rationale of those cases:

"Since *the action for refund of taxes is in the nature of a common law action for money had and received and is governed by equitable principles*, the burden of proof is upon the taxpayer to prove not only that the determination of the tax was wrong, but to produce evidence from which another and proper determination could be made.' David v. Phinney, 5 Cir. 1965, 350 F.2d 371, 376, quoting 10 Mertens Law of Federal Income Taxation § 58A.35, pp. 98–99. (Emphasis added).

We therefore agree with the conclusion of United States v. Lease, *supra*, that a taxpayer defending a collection suit need only show that the Government's assessment was arbitrary and that the burden is then on the Government to show whether any deficiency exists and, if so, in what amount.

We further conclude that the Bar L Ranch has met that burden in this case.[4] In computing capital gain or loss, the amount realized from sale or other disposition of property is the sum of any money received plus the fair market value of the property (other than money) received. Int.Rev.Code of 1954, § 1001(b). The fair market value of the note and accounts receivable is therefore the pivotal question.

Fair market value is measured by what a willing buyer would pay a willing seller when neither is under any compulsion and both are reasonably informed as to all relevant facts. Willow Terrace Development Co. v. Commissioner of Internal Revenue, 5 Cir. 1965, 345 F.2d 933, cert. denied, 382 U.S. 938, 86 S.Ct. 389, 15 L.Ed.2d 349; Anderson v. Commissioner of Internal Revenue, 5 Cir. 1957, 250 F.2d 242, 249, cert. denied, 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 844; French Dry Cleaning Co. v. Commissioner of Internal Revenue, 5 Cir. 1934, 72 F.2d 167. Bar L contended in the District Court and on appeal that since both the obligors on the note and accounts receivable (*i.e.*, Mr. Lightfoot and Paving Co.) were insolvent on the date of the transaction, a purchaser under no compulsion to buy would not even have paid the $33,449.83[5] which Bar L assigned to the note and accounts, much less the face value. The District Court made an implied finding of insolvency[6] and found Bar L's argument appealing in theory, but did not think the fact that those liable for the note and accounts were insolvent showed that the Commissioner's determination was arbitrary.

The District Court assumed, despite its realization that the Commissioner's valuation might prove to be erroneous, that the valuation was not arbitrary because

assigning the note and accounts their face value is inarguably logical. See Anderson v. Commissioner of Internal Revenue, 250 F.2d 242, 248–249 (5 CA1957), cert. denied, 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 844 (1958); Williams v. Commissioner of Internal Revenue, 45 F.2d 61 (5 CA1930).

300 F.Supp. at 840, n. 1.

However, the two cases cited by the District Court are not persuasive in support

---

4. This court recognizes that factual determinations are involved in the ultimate question of arbitrariness of the Commissioner's determination of fair market value.

The district court's finding on this ultimate issue, however, is not to be garrisoned by the clearly erroneous rule. Though it has factual underpinnings this ultimate issue is inherently a question of law. Obeisance to the clearly erroneous rule must yield when the facts are undisputed and we are called upon to reason and interpret. This is the law obligation of the court as distinguished from its fact finding duties. United States v. Winthrop, 5 Cir. 1969, 417 F.2d 905, 910; Maryland Casualty Company v. State Bank & Trust Company, 5 Cir. 1970, 425 F.2d 979.

5. This figure was arrived at by subtracting the $16,550.17 mortgage on the 51.576 acres assumed by Young from the $50,000 selling price fixed by Bar L's accountant.

6. See 300 F.Supp. 842, col. I.

of its assumption. *Anderson* merely stated that "it was not arbitrary for the Commissioner to determine that the notes representing the sales price of houses had a value equal to their face, *since taxpayer was currently collecting them, * * *"* *Id.* at 248. (Emphasis added). It is noteworthy, too, that the court in *Anderson* went on to hold that the Tax Court's valuation of the notes at 70 percent of the face value was not clearly erroneous. *Williams* sustained a valuation of notes at face value only after first determining that the taxpayer had not shown any reason for finding such a valuation wrong. For example, "No showing was made as to the *financial status of the * * * maker of the notes." Id.* at 62. (Emphasis added).

 In determining fair market value for purposes of Section 1001 gain or loss, commercial realities must be given due consideration. Jack Daniel Distillery v. United States, 1967, 379 F.2d 569, 180 Ct.Cl. 308. *See generally* Miller v. United States, 6 Cir. 1956, 235 F.2d 553; Anderson v. Commissioner of Internal Revenue, *supra;* Williams v. Commissioner of Internal Revenue, *supra.* In the absence of countervailing circumstances not here present, we think that when a taxpayer shows that those liable on a note or account receivable are insolvent, the commercial practicalities and realities dictate that he has met his burden of showing that those obligations are not worth their face value and that a valuation at face is arbitrary.[7] Especially is this so where, as here, testimony shows that the Internal Revenue Service merely assumed, without investigation, that the face value represented the fair market value. Although a valuation at face may be a reasonable start-

ing place, such a valuation will be held to be arbitrary if evidence of commercial realities is introduced which shows that the valuation is clearly excessive.

 One further matter calls for comment. The District Court rejected all evidence tending to show a low market value of the 51.576 acres of land transferred to Young as being irrelevant to the fair market value of the note and accounts received by taxpayer, saying that "an expert witness offering a reliable appraisal of the note and accounts would have been more helpful." 300 F.Supp. at 842. We agree that an expert's appraisal of the value of the note and accounts might be preferable. However, as indicated earlier, the burden to establish the fair market value of the note and accounts was on the Government and, therefore, the taxpayer should not have been penalized for lack of such evidence.

Furthermore, we think evidence of the value of the land is relevant in determining the fair market value of the note and accounts received therefor under Section 1001(b). The basis given by the District Court for rejecting evidence of the market value of the land was the language in Section 1001(b) to the effect that the amount of gain realized is measured by the value of the property "received" (the note and accounts in the instant case). Despite the language of the statute, however, the Supreme Court held in United States v. Davis, 1962, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335, reh. denied, 371 U.S. 854, 83 S.Ct. 14, 9 L.Ed.2d 92, that when a husband transferred stock to his ex-wife pursuant to a property settlement agreement in exchange for relinquishment by her of her marital rights, the husband realized a taxable gain that could be computed. Al-

---

7. The note involved in this case was secured by a chattel mortgage on Paving Co.'s equipment having a value of $48.-627.95. Although the promissors on the note were insolvent, the existence of the mortgage, of course, prevents the note from being valueless as taxpayer claims. However, the indebtedness still outstanding on the note alone was $66,313.54 and the total indebtedness on the note and accounts was $118,100.07. Therefore, while the value of the equipment mortgaged is revelant in determining the fair market value of the note and accounts (at least if the equipment is not subject to superior encumbrances), the existence of the mortgage does not negate the fact of insolvency to the extent that Bar L has failed to establish that the Commissioner's valuation at face value was arbitrary.

though it recognized the emotion, tension and practical necessities involved in divorce negotiations and resultant property settlements, the Court nevertheless concluded that there was an arm's length transaction between husband and wife, The Court then concluded that the value of the relinquishment of the marital rights could be measured:

> It must be assumed, we think, that the parties acted at arm's length and that they judged the marital rights to be equal in value to the property for which they were exchanged. There was no evidence to the contrary here. Absent a readily ascertainable value it is accepted practice where property is exchanged to hold, as did the Court of Claims in Philadelphia Park Amusement Co. v. United States, 126 F.Supp. 184, 189, 130 Ct.Cl. 166, 172 (1954), that the values "of the two properties exchanged in an arms length transaction are either equal in fact, or are presumed to be equal." *Id.* at 72, 82 S. Ct. at 1194; *accord*, Seas Shipping Company v. Commissioner of Internal Revenue, 2 Cir. 1967, 371 F.2d 528, cert. denied, 387 U.S. 943, 87 S.Ct. 2076, 18 L.Ed.2d 1330 (computing fair market value of shares of stock); Southern Natural Gas Company v. United States, 1969, 412 F.2d 1222, 188 Ct.Cl. 302 (stock); Tasty Baking Company v. United States, 1968, 393 F.2d 992, 184 Ct.Cl. 56 (value of employees' services, past and future, presumed to equal the fair market value of property contributed to employee pension trust).

The presumed-equivalence-in-value rule of *Davis* has generally been limited to "cases involving valuation of property for which there is little or no market." Seas Shipping Company v. Commissioner, *supra*, 371 F.2d at 529; Southern Natural Gas Company v. United States, *supra*, 412 F.2d at 1252. However, there will be "little or no market" even for shares of stock traded over an established exchange if there are other factors such as the large size of the block in question which the market price does not reflect. Seas Shipping Company v. Commissioner, *supra*. In such circumstances use of the *Davis* presumed-equivalence-in-value rule may even be preferable to expert appraisals of the value of the property received. Southern Natural Gas Company v. United States, *supra*. The instant case is slightly different from *Davis* and its progeny in that here there is no indication that the parties who were at arm's length bargained over the *actual dollar worth* of the exchange. That is, no precise dollar worth was assigned to the land at the time of the transfer (at least no such assignment appears from the record). It would, therefore, be inappropriate to give the presumed-equivalence-in-value rule the full presumptive effect given in *Davis et al.*

However, it is clear from the record as it now stands that Young and Bar L (along with Paving Co. and Mr. Lightfoot) were parties with adverse interests who were at arm's length. It is also clear that there was little or no market established for the note and accounts receivable and that such a market may be difficult to establish even by expert testimony. Therefore, we think, in accordance with the principles of *Davis*, that the value of the 51.576 acres transferred to Young is a relevant factor to be given consideration in determining the value of the note and accounts received in exchange therefor and that evidence of the value of the land should not be rejected by the District Court.

The judgment is reversed and the case is remanded to the District Court for further proceedings not inconsistent with this opinion.

Reversed and remanded.