UNITED STATES of America, Plaintiff,

v.

Krishnalalla PERSAUD, a/k/a K.D.N. Persaud, a/k/a Kris Persaud, individually and as trustee; Sabeta Persaud; Hindu Sanatan Dharma of America, Inc.; American Sevashrama Sangha of Florida, Inc.; Chester Zalewski; James E. McDonough, Jr., as successor in interest to Clarence M. Hoenstine II; Southpac Properties; Devi Trust; Julie's Topsiders, Inc., t/a Julie's Waterfront Restaurant; Washington Mutual, successor in interest to North American Mortgage Company, successor in interest to, The Dime Store Savings Bank, FSB; Luis Campoy; Ana Maria Callejas; Robert K. Burrow; Earl K. Wood, Orange County, Florida Tax Collector; and C.B. Agrawal, Defendants.

No. 6:02–CV–1528ORL22JGG.

United States District Court,
M.D. Florida,
Orlando Division.

July 1, 2005.

Carol Koehler Ide, Hemant Sharma, U.S. Dept. of Justice, Washington, DC, Ralph E. Hopkins, U.S. Attorney's Office Middle District of Florida, Orlando, FL, for Plaintiff.

James E. McDonough, Jr., Birmingham UK, England, pro se.

Ashby A. McClanahan, Jr., Law Office of A.A. McClanahan, Jr., Sanford, FL, William Francis Lawless, Sr., Prabodh C. Patel, Moyer, Straus & Patel, P.A., Altamonte Springs, FL, Laura Kristin Sundberg, Akerman Senterfitt–Orlando, Michael A. Paasch, Mateer & Harbert, P.A., Orlando, FL, for Defendants.

## ORDER

CONWAY, District Judge.

### I. INTRODUCTION

This cause comes before the Court for consideration of the United States' Renewed Motion for Summary Judgment (Doc. 145). Despite being ordered to file a response to the motion if he opposed it, Defendant Krishnalalla Persaud has not done so. Upon carefully considering the matter, the Court determines that the United States is entitled to summary judgment against Persaud.

### II. BACKGROUND AND PROCEDURAL HISTORY

The United States claims that Persaud owes back taxes and that he fraudulently conveyed his interests in several real properties to third parties. In addition to Persaud, the United States sues Persaud's spouse, a number of other persons and entities alleged to be Persaud's nominees, and others who might claim an interest in the subject real properties. Most of the defendants besides Persaud have been defaulted. *See* Doc. 101.[1]

> By way of relief, the United States seeks to obtain a determination of the amount of the federal income tax liabilities of the defendant, Krishnalalla Persaud, a/k/a K.D.N. Persaud, a/k/a Kris Persaud, for the years 1982–1989, inclusive; to set aside fraudulent conveyances; to foreclose federal tax liens; for sale of real property; and to obtain a deficiency judgment for unpaid federal income tax liabilities assessed against [Persaud] for the years 1982–1989, inclusive.

Amended Complaint (Doc. 64), ¶ 1, at 1–2.

The United States filed its initial complaint in December 2002. Among the allegations in that pleading was that Persaud resided at 8236 Conroy–Windermere Road, Orlando, Florida. *See* Doc. 1, ¶ 5, at 2. In response to the complaint, Persaud filed two separate answers. In his first answer, entitled "An-

---

1. The only remaining active defendants are Earl K. Wood, the Orange County Tax Collector, and Julie's Topsider, Inc.

swer Brief," Persaud admitted a few allegations, including that he resided at the Conroy–Windermere Road address. *See* Doc. 7, ¶ 5, at 2. Additionally, that address appears below Persaud's signature at the end of the pleading. Doc. 7 at 7. In his subsequent answer, Persaud denied each and every allegation in the complaint. *See* Doc. 31. Once again, Persaud listed the Conroy–Windermere Road address beneath his signature at the end of the pleading. *Id.* at unnumbered 2nd page.

In May 2003, the Court entered a Case Management and Scheduling Order ("CMSO") (Doc. 62). Among other things, the CMSO established a discovery completion deadline of October 31, 2003 and set the case for trial in April 2004. *See* Doc. 62 at 2. The day after the CMSO was entered, the United States filed an amended complaint. *See* Doc. 64.[2] Among other things, that amended pleading added an allegation that one mortgage appeared to be satisfied, and added two parcels of real property against which tax lien foreclosure was sought. *See* Doc. 57 at 1–2.

On September 26, 2003, the United States sent Persaud "Plaintiff's First Request for Admissions," etc. (Exhibit 1 to Doc. 83). The certificate of service which appears at the end of that document reflects that it was mailed to Persaud at his Conroy–Windermere Road address. *Id.* Persaud did not respond to the request for admissions within the time frame set forth in Fed.R.Civ.P. 36. As will be discussed in more detail *infra,* it was only after the United States filed a summary judgment motion relying on Persaud's deemed admissions that Persaud attempted to withdraw the admissions.

On October 31, 2003, the United States filed a "Motion to Compel Krishnalalla Persaud to Respond to Discovery Requests, for Sanctions Against Persaud for Failure to Appear at Noticed Deposition, and for Extension of Discovery Deadline to Take Persaud's

Deposition" (Doc. 77). In that motion, the United States represented that Persaud had never responded to other discovery devices (a request for production of documents and a set of interrogatories) mailed to him on September 26, 2003, the same day the United States sent Persaud the request for admissions. The United States also asserted that it had written Persaud in an attempt to resolve the issue of his discovery non-compliance without court intervention, but that Persaud had not responded to the letter.[3] Additionally, the United States reported that it had noticed Persaud's deposition, then rescheduled it at Persaud's request, then rescheduled it again when Persaud stated he had a conflicting appointment at the Veterans Administration Hospital, after which Persaud failed to appear for his rescheduled deposition on October 23, 2003. On that point, the United States revealed that the very day of his scheduled deposition, Persaud faxed two virtually identical notes (dated the previous day) to counsel for the United States, stating that Persaud would not be attending his deposition.[4] The notes stated:

> I'am [sic] sending this fax to notify you that Mr. Kris Persaud can not attend the deposition tomorrow at 9:30 due to his blood pressure which is 171 over 119. He was put on service notification to take 2 weeks of bed rest. extention [sic] of time is needed. Sorry for any inconvenient [sic]. Thank you.

Exhibit "E" to Doc. 77. The notes were not signed by anyone, did not bear the letterhead of a physician's office, and were hand-written on a standard form fax cover sheet. *Id.*

On November 12, 2003, Magistrate Judge James G. Glazebrook set the United States' motion to compel discovery for a hearing on January 9, 2004. *See* Doc. 80.

On December 5, 2003, the United States filed its first motion for summary judgment against Persaud. *See* Doc. 83. Therein, the United States included a statement of undis-

---

**2.** Persaud never filed an answer to the amended complaint. As will be discussed *infra,* he did belatedly file a motion to dismiss it.

**3.** At the time, Persaud was representing himself. Currently, however, he is represented by counsel.

**4.** The United States' motion to compel states these notes were received on "October 23, 2002." *See* Doc. 77, ¶ 13, at 4. The year 2002 is an obvious typographical error; the correct year was 2003.

puted material facts based on deemed admissions resulting from Persaud's failure to respond to the request for admissions previously served on him. The United States argued that summary judgment was warranted based on the undisputed facts established by Persaud's deemed admissions.

On December 19, 2003, the Court entered an Order requiring Persaud to respond to the summary judgment motion no later than January 5, 2004. *See* Doc. 102. This prompted Persaud, who previously had been proceeding *pro se*, to have an attorney enter an appearance for him in this case. *See* Doc. 103. Additionally, Persaud filed a response to the summary judgment motion (Doc. 104), affidavits supporting his response (Docs. 105 & 106), and a verified motion to withdraw his deemed admissions (Doc. 107).

In his summary judgment response and affidavits, Persaud claimed that he was not required to file tax returns or pay income taxes for the years in question because "he was a full time minister of the Hindu religion and received only ministerial expenses, but no salary, and his taxable personal income never achieved an amount that required him to file personal income tax." Doc. 104, ¶ 1, at 2. He also claimed that one of the asserted fraudulent transfers of real property "was not fraudulent but was done in anticipation of his taking final vows as a Hindu minister, which would require him to divest himself of material property." *Id.*, ¶ 3, at 2. He contended that other properties were owned by a religious organization of which he was a member, and that he and his spouse donated yet another parcel to that same religious organization. *Id.*, ¶¶ 5, 6 & 7, at 2–3. In sum, Persaud denied owing any taxes and having made any fraudulent transfers.

In his verified motion to withdraw his deemed admissions, Persaud claimed that "to the best of his knowledge" he never received the request for admissions the United States mailed him on September 26, 2003. Doc. 107, ¶ 4, at 2. On this asserted basis, Persaud asked the Court to grant his motion to withdraw his deemed admissions.

On January 7, 2004, two days after filing his response to the United States' summary judgment motion and his request to withdraw his deemed admissions, and just two days before the scheduled hearing on the United States' motion to compel discovery, Persaud filed a document notifying the Court that he had filed for bankruptcy the previous day. *See* Doc. 108. As a result of this filing, Judge Glazebrook entered an Order (Doc. 109) denying the United States' motion to compel and Persaud's motion to withdraw his deemed admissions, without prejudice to the movants' right to refile the motions following, *inter alia*, entry of an order lifting the automatic bankruptcy stay. Additionally, on February 2, 2004, the undersigned judge entered an Order (Doc. 113) staying this case based on Persaud's bankruptcy filing. The Court directed the United States to file status reports concerning Persaud's bankruptcy case, and stated that the United States could reinstate the case to active status at the conclusion of the bankruptcy proceedings if this suit was not resolved by those proceedings.

On June 8, 2004, the United States filed a motion to reinstate this case to active status. *See* Doc. 115. Therein, the United States reported that the Bankruptcy Court had "dismissed Persaud's Chapter 11 bankruptcy proceeding and enjoined him from filing any bankruptcy case for a period of 180 days[.]" *Id.*, ¶ 2, at 2. At the same time, the United States renewed its motion to compel Persaud to respond to its discovery requests. *See* Doc. 116. Judge Glazebrook denied that motion, without prejudice, for failure to comply with Local Rule 3.01(g).[5] *See* Doc. 117.

On June 14, 2004, the undersigned judge entered an Order (Doc. 118) granting the United States' motion to reinstate the case to active status, reactivated the United States' motion for summary judgment, established new scheduling deadlines and referred the case to Judge Glazebrook for a settlement conference. Judge Glazebrook then scheduled a settlement conference for July 22, 2004. *See* Doc. 119.

On June 23, 2004, the Court entered an Order (Doc. 120) directing the United States

---

**5.** Local Rule 3.01(g) requires a pre-filing conference before filing most motions.

to file a reply memorandum addressing the arguments raised in Persaud's response to the United States' summary judgment motion, as well as the question of whether Persaud should be permitted to withdraw his deemed admissions based on the arguments Persaud raised in his motion to withdraw those admissions. The United States filed its reply on July 12, 2004. *See* Doc. 126.

On June 30, 2004, the United States filed a second renewed motion to compel discovery from Persaud. *See* Doc. 121. The United States accompanied this motion with a "Certification Pursuant to Local Rule 3.01(g)." Doc. 122. The Certification stated:

> By leaving a detailed voice mail to Persaud's counsel on June 18, 2004, the undersigned again attempted to confer with Persaud regarding the relief requested in the Renewed Motion to Compel Krishnalalla Persaud to Respond to Discovery Requests, for Sanctions Against Persaud for Failure to Appear at Noticed Deposition, and for Extension of Discovery Deadline to Take Persaud's Deposition. Persaud's counsel did not respond to the telephone call. This Certification will be amended should Persaud respond to the plaintiff's efforts.

Doc. 122 at 1–2. By endorsed Order (Doc. 123) dated July 6, 2004, Judge Glazebrook again denied the discovery motion for failure to comply with Local Rule 3.01(g).

On July 9, 2004, the United States filed a third renewed motion to compel discovery from Persaud. *See* Doc. 124. This time, the motion incorporated a Local Rule 3.01(g) certification which reflected that counsel for the United States had actually spoken with Persaud's attorney, and that Persaud's lawyer stated "that he does not oppose the extension of discovery to permit a deposition of Persaud being taken and that Persaud will be responding to the outstanding discovery requests." Doc. 124 at 2. That same day, the United States also filed an unopposed motion to reschedule the settlement conference set for July 22, 2004. *See* Doc. 125.

On July 13, 2004, two other attorneys entered a notice of appearance for Persaud.

*See* Doc. 127. Three days later, Persaud's new attorneys filed a "Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative Motion for Summary Judgment" (Doc. 128). The asserted basis for this motion was that the statute of limitations had run on the tax debts the United States was attempting to collect through the present suit. The United States filed a legal memorandum opposing this motion on August 6, 2004. *See* Doc. 133.

On July 16, 2004, Judge Glazebrook entered an Order (Doc. 130) deferring ruling on the United States' discovery motion until the time of the settlement conference, which he reset for August 30, 2004.

On July 23, 2004, the undersigned judge extended the discovery completion deadline to August 24, 2004. *See* Doc. 131.

On August 17, 2004, Persaud attempted to file with the Clerk a response to the United States' request for admissions. *See* Doc. 134. The next day, Persaud attempted to file a response to interrogatories the United States served on him. *See* Doc. 135. Judge Glazebrook ordered these filings stricken on the ground that their filing violated Local Rule 3.03. *See* Doc. 136.

On August 25, 2004, Persaud requested a hearing on his motion to dismiss/for summary judgment. *See* Doc. 137. Judge Glazebrook granted that request, stating that Persaud's motion would be heard at the August 30th hearing. *See* Doc. 138. On August 27, 2004, the undersigned judge referred Persaud's motion to dismiss/for summary judgment to Judge Glazebrook. *See* Doc. 139.

On August 27, 2004, the undersigned judge denied the United States' summary judgment motion without prejudice to its refiling within eleven days after a ruling on Persaud's motion to dismiss/for summary judgment. *See* Doc. 140.[6]

At the August 30, 2004 hearing before Judge Glazebrook, Persaud and the United States reached what can best be described as a conditional settlement. *See* Docs. 141 & 142. Judge Glazebrook entered an Order

---

6. This order was not docketed until August 30, 2004.

(Doc. 141) stating that the United States' motion to compel was denied in part and moot in part in light of the settlement, and that Persaud's motion to dismiss was deemed withdrawn. Continuing, Judge Glazebrook's Order stated:

The case has been settled pursuant to an agreement that requires the approval of the Department of Justice. The parties shall file a written and signed stipulation of settlement on or before September 13, 2004. For the purposes of administratively closing the file, the Court hereby orders pursuant to Local Rule 3.08(b), the parties and the district judge having consented, that the case be dismissed subject to the right of any party to move the Court on or before March 1, 2005 for the purpose of entering a stipulated form of final order or judgment, or, on good cause shown, to reopen the case for further proceedings.

*Id.* Pursuant to this Order, the case was closed.

On September 16, 2004, the United States filed the parties' Stipulation for Settlement. *See* attachment to Doc. 143. The stipulation recited that Persaud consented to entry of judgment in the amount of $1,541,245.48, plus further interest and statutory additions, upon final approval of the settlement "offer" by the Department of Justice. Among other things, the document also required Persaud to obtain appraisals of the real properties in suit, along with information concerning the amount of *ad valorem* taxes owed and mortgage payoffs, by October 25, 2004, after which counsel for the United States would begin the process of securing approval of the settlement "offer" by the Department of Justice.

The conditional settlement fell through. Or, more accurately, it never even got off the ground. On February 28, 2005, the United States filed a motion to reopen the case. *See* Doc. 144. Therein, the United States disclosed that Persaud had failed to take the initial steps for the settlement to become effective. More particularly, Persaud failed to provide the United States with the information required by the settlement agreement

(appraisals, *ad valorem* taxes, and mortgage payoffs), following which the United States sent Persaud's counsel two letters requesting the required information. The second letter notified Persaud's attorney that if the United States did not receive the required information by February 1, 2005, it would move to reopen the case. Presumably, since the United States proceeded to file the motion to reopen, it did not receive any satisfactory response to these letters. The Local Rule 3.01(g) certification included within the motion to reopen stated that counsel for the United States had conferred with Persaud's attorney, who consented to the relief requested in the motion. *See* Doc. 144 at 2.

The same day it filed its motion to reopen, the United States also filed a renewed motion for summary judgment and a fourth renewed motion to compel discovery directed at Persaud. *See* Docs. 145 & 146.

On March 1 and 2, 2005, respectively, the undersigned judge granted the motion to reopen the case and entered a new case management and scheduling order. *See* Docs. 147 & 149.

Persaud never responded to the fourth motion to compel discovery. On March 16, 2005, Judge Glazebrook granted that motion as unopposed, except insofar as it sought a ruling compelling answers to interrogatories [7] and an extension of the discovery deadline, which requests he deemed moot. *See* Doc. 151.

Because Persaud also had not responded to the United States' final summary judgment motion, on March 31, 2005, the undersigned judge entered an Order (Doc. 152) directing Persaud to file a response on or before April 22, 2005 if he opposed the motion. Despite this order, Persaud never responded to the United States' most recent summary judgment motion.

### III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when "the pleadings, depositions, an-

---

7. At some point, Persaud finally did respond to the interrogatories, but he never responded to

the request for production of documents. *See* Doc. 146, ¶ 5 n. 1, at 4.

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.' " *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396, *modified on other grounds*, 30 F.3d 1347 (11th Cir.1994), *cert. denied*, 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995)). "There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen*, 83 F.3d at 1349. The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir.1993), *reh'g and reh'g en banc denied*, 16 F.3d 1233 (11th Cir.1994).

## IV. ANALYSIS

As the foregoing procedural history clearly demonstrates, Persaud has engaged in one delay tactic after another in an effort to prevent the United States from obtaining relief in this case. Initially, Persaud failed to respond at all to written discovery served upon him. When the United States attempted to set his deposition, he succeeded in having it rescheduled twice, then failed to show and instead sent counsel for the United States a wholly unconvincing unsigned "note" concerning his medical condition.

The United States wrote Persaud in an effort to resolve the issue of his discovery non-compliance. After this was unsuccessful, the United States filed a motion to compel discovery and a motion for summary judgment. Persaud initially responded to neither. It was only after the Court ordered Persaud to file a response to the summary judgment motion that Persaud hired counsel, responded to the summary judgment motion

with a number of rather dubious legal positions, and moved to set aside his deemed admissions.

Just two days before the January 9, 2004 hearing on the motion to compel, Persaud filed his suggestion of bankruptcy, thus preventing a ruling on his discovery non-compliance and otherwise forcing a delay in this litigation. That particular delay was short-lived. The Bankruptcy Court promptly dismissed Persaud's bankruptcy case and the United States succeeded in having this case reinstated. Seemingly, the case was back on track; but not for long. Persaud then agreed with the United States to settle the case. As a part of the conditional settlement, Persaud promised to take certain preliminary steps before government counsel would be required to seek Justice Department approval. This settlement resulted in closure of this case, once again foreclosing any judicial ruling concerning Persaud's discovery violations or a determination of the merits of the United States' claims. However, Persaud did not even perform the initial steps required of him under the settlement agreement. Once again, the Court was forced to reopen the case and the United States had to refile its summary judgment motion. This time, Persaud has not even bothered to respond to the summary judgment motion, even after being ordered to do so if he opposed it.

Against this backdrop of deliberate and repeated delay, the Court finally considers the United States' Renewed Motion for Summary Judgment (Doc. 145), filed February 28, 2005, the only motion now pending.

First, the Court addresses whether Persaud is bound by his admissions created by his failure to timely respond to the United States' request for admissions. No motion to set aside those admissions is currently pending. As previously noted, Persaud did file such a motion earlier in the case, but it was never ruled on because Persaud filed for bankruptcy. Nevertheless, the Court deems it necessary to reach the question of whether Persaud is bound by his deemed admissions, since the United States relies on those admissions in its summary judgment motion.

"Rule 36 of the Federal Rules of Civil Procedure governs requests for admissions, allowing a party to serve on 'any other party a written request for the admission ... of the truth of any matters within the [general scope of discovery] set forth in the request that relate to statements or opinions of fact or of the application of law to fact.'" *Perez v. Miami–Dade County,* 297 F.3d 1255, 1263–64 (11th Cir.2002) (brackets in original; quoting Fed.R.Civ.P. 36(a)), *cert. denied,* 537 U.S. 1193, 123 S.Ct. 1291, 154 L.Ed.2d 1028 (2003). "The served party has thirty days after service to respond to the request—by a written answer 'specifically deny[ing] the matter' or 'set[ting] forth in detail the reasons why [it] cannot truthfully admit or deny the matter' or by objecting to the request." *Perez,* 297 F.3d at 1264 (brackets in original; quoting Fed.R.Civ.P. 36(a)). "If a party fails to respond within thirty days, then '[t]he matter is admitted.'" *Id.* (brackets in original; quoting Fed.R.Civ.P. 36(a)). "Once the matter is admitted, Rule 36(b) provides that it is 'conclusively established unless the court on motion permits withdrawal or amendment of the admission.'" *Id.* (quoting Fed.R.Civ.P. 36(b)). "A court 'may permit withdrawal or amendment [of an admission] when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.'" *Id.* (brackets in original; quoting Fed.R.Civ.P. 36(b)). "Based on this language, [the Eleventh Circuit has] held that district courts should apply a 'two-part test' in deciding whether to grant or deny a motion to withdraw or amend admissions." *Id.* (citing *Smith v. First Nat'l Bank of Atlanta,* 837 F.2d 1575, 1577 (11th Cir.), *cert. denied,* 488 U.S. 821, 109 S.Ct. 64, 102 L.Ed.2d 41 (1988)). "First, the court should consider whether the withdrawal will subserve the presentation of the merits, and second, it must determine whether the withdrawal will prejudice the party who obtained the admissions in its presentation of the case." *Perez,* 297 F.3d at 1264.

Concerning the first prong, this Court determines that withdrawal of Persaud's deemed admissions would not promote the presentation of the merits of this case. It appears the United States is correct in stating that the only issue remaining as to Persaud is whether the tax assessments made against him are valid. The United States has filed a certified copy of the "Certificate of Assessments [and] Payments," etc. regarding Persaud's tax liabilities for the years in question. *See* Exhibit A to Doc. 133. This document is "presumptive proof of a valid assessment." *United States v. Chila,* 871 F.2d 1015, 1018 (11th Cir.), *cert. denied,* 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 501 (1989). Moreover, a taxpayer defending a tax collection suit bears the initial burden of demonstrating that the tax assessment was arbitrary. *See Bar L Ranch, Inc. v. Phinney,* 426 F.2d 995, 998–99 (5th Cir.1970). Only then does the burden of proof shift to the United States. *See Bar L Ranch,* 426 F.2d at 999. By not even bothering to respond to the United States' summary judgment motion, Persaud has necessarily failed to meet his burden of demonstrating the arbitrariness or inaccuracy of the assessments against him. Even considering Persaud's submissions opposing the United States' earlier summary judgment motion, Persaud's wholly conclusory and facially frivolous "vow of poverty/ministerial expenses" position is insufficient to meet his burden of proof and to create an issue of fact concerning his tax liability. Accordingly, relieving Persaud from his deemed admissions would not subserve the presentation of the merits of this case.

Turning to the second prong of the *Perez* analysis, the Court determines that the United States has established that it would suffer prejudice if Persaud is permitted to withdraw his admissions. For the purpose of this analysis, the Court will assume that relieving Persaud from his admissions would subserve the presentation of the merits, thereby effectively requiring the United States to come forward with further proof concerning Persaud's tax liability. In order to marshal evidence on this point, the United States would be required to attempt once more to obtain discovery from Persaud. More to the point, the United States will have to take Persaud's deposition. However, Persaud has repeated-

ly thwarted the United States' efforts to depose him in the past. It is reasonable to assume that this course of conduct would continue. Of course, if Persaud fails to show, the Court can compel him to submit to a deposition. However, based on the Court's past experience in situations of this type, particularly where a witness raises medical excuses for his or her failure to appear, this process will take time. The United States has waited long enough to obtain the relief it seeks against Persaud. Moreover, it is reasonable to assume from Persaud's past unwillingness to voluntarily submit to a deposition that he will be less than cooperative once he eventually appears. Hence, merely extending the discovery deadline for the umpteenth time will likely not mitigate the prejudice the United States will suffer if this case is further delayed. Further, in order to accommodate the refiling of dispositive motions and the filing of a pretrial statement and related submissions, another continuance of trial will undoubtedly be necessary. Under these collective circumstances, the United States has met the prejudice prong of *Perez.*

This Court recognizes the Eleventh Circuit has admonished against "re-serv[ing] the complaint in the form of a request for admissions in order to require the defendant to admit or deny nearly every paragraph [of a complaint it has already answered]." *Perez,* 297 F.3d at 1269 (internal quotation marks omitted). However, Persaud is no ordinary litigant. He has obstructed the discovery process and has engaged in a calculated pattern of delay in this case. Additionally, the Court cannot let Persaud's "lost in the mail" excuse pass comment; frankly, the Court believes Persaud did receive the request for admissions along with the other written discovery the United States mailed to him at his residence. Considered in the context of Persaud's other behavior in this case, his non-delivery excuse rings hollow. To release Persaud from his deemed admissions under these circumstances would reward him for abusing the litigation process, would waste precious judicial resources, and would subject the United States to manifest inequity. Enough is enough. Hence, this Court believes this case presents unusual circumstances warranting departure from the general rule proscribing "re-serving" the complaint in the form of a request for admissions.

Finally, as suggested in the Court's discussion of the first *Perez* prong, the United States is entitled to summary judgment even if Persaud is relieved of his deemed admissions. The tax assessments at issue are presumptively valid. Persaud bears the burden of demonstrating the arbitrariness of the assessments. Having elected not to respond to the United States' latest summary judgment motion, he has failed to meet that burden. Moreover, even if it is appropriate to consider Persaud's prior response to the earlier summary judgment motion, Persaud's frivolous and conclusory submissions are insufficient to satisfy his burden and create an issue of material fact. On this alternative basis, the United States is entitled to summary judgment against Persaud in any event.

## V. CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1. The United States' Renewed Motion for Summary Judgment (Doc. 145), filed February 28, 2005, is GRANTED.

2. On or before July 15, 2005, the United States shall submit a proposed form of final judgment that addresses its claims against all parties to this action, including the interests of the Orange County Tax Collector and Julie's Topsider, Inc.

3. Any party who objects to the form of the proposed final judgment shall file and serve specific objections on or before July 29, 2005.

4. This case is removed from the October 2005 trial calendar.