[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 17, 2002
THOMAS K. KAHN
CLERK

No. 01-15132
Non-Argument Calendar

D. C. Docket No. 97-01915-CIV-JLK

MICHAEL PEREZ,

Plaintiff-Appellee-
Cross-Appellant,

versus

MIAMI-DADE COUNTY,

Defendant-Appellant-
Cross-Appellee.

Appeals from the United States District Court
for the Southern District of Florida

**(July 17, 2002)**

Before TJOFLAT, MARCUS and BRIGHT*, Circuit Judges.

*Honorable Myron H. Bright, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

TJOFLAT, Circuit Judge:

The primary issue in this appeal is whether the district court abused its discretion in denying the defendants' motion, made pursuant to Rule 36(b) of the Federal Rules of Civil Procedure, to withdraw admissions.[1] As a result of the court's action, the plaintiff established the defendants' liability under 42 U.S.C. § 1983 as a matter of law and obtained a multi-million dollar jury verdict. We conclude that the court abused its discretion; we therefore vacate the judgment and remand the case for further proceedings.

## I.

### A.

On March 24, 1995, Michael Perez and his partner, both detectives in the Miami-Dade County Police Department, were working undercover when they overheard a police radio report that fellow officers were in pursuit of several black

---

[1] Rule 36(b),entitled "Effect of Admission," states in pertinent part as follows:

> Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provision of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.

Here, the defendants styled their motion a "Motion to Withdraw or Amend Admissions." For convenience, we refer to it as a motion to withdraw admissions.

males who had just robbed a Radio Shack. Perez and his partner joined the chase, and, upon discovering the suspects driving away from the scene, followed them by car. When the suspects abandoned their vehicle, Perez and his partner chased them on foot.

Meanwhile, Sergeant William Allsbury,[2] also a County officer, was patrolling in his police car when he heard the same radio report, and, seeing Perez and his partner running along the street in the same area, believed them to be two of the suspects. When Allsbury closed in on Perez and his partner, his vehicle struck Perez. Perez contends that Allsbury struck him intentionally and that, as a result, he suffered serious injuries, including herniated discs, broken bones, and permanent psychological damage.

B.

Perez filed this action on June 19, 1997. His complaint contained four counts against the County and four against Allsbury. Count I sought relief against both defendants under 42 U.S.C. § 1983.[3] It alleged that the County had a

---

[2] Throughout the record, Sergeant Allsbury's name is spelled either as "Alsbury" or "Allsbury." Because both the complaint and the district court used the spelling "Allsbury," we do the same.

[3] 42 U.S.C. § 1983 states the following:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person

"practice, custom or policy . . . [of] allowing police officers to use unnecessary and unreasonable deadly force, including, but not limited to, the use of motor vehicles to strike and detain subjects, in the apprehension of persons," and that Allsbury was carrying out that practice, custom, or policy when his automobile struck Perez. Aimed only at Allsbury, Counts II and III alleged claims of common law negligence and assault and battery, respectively. Counts IV and VI sought relief solely against the County under two Florida statutes: the "Whistle Blower's Statute" for "retaliatory personnel action[s]" the County allegedly took against Perez after he reported the incident, and the "Full Pay Statute," which entitles an employee to full pay upon being injured at work.[4]  Finally, Count V, directed at both the County and Allsbury under 42 U.S.C. § 1985, alleged that the two defendants had "conspired to deprive [Perez] of equal protection of the laws and of equal privileges and immunities under the laws based upon [their] animus against persons of African American or Latin origin."  In each count, Perez prayed for

within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was available.

[4] Nowhere in the complaint is there a citation to either of these statutes.  Presumably, Perez was relying on Fla. Stat. chs. 112.3187-112.31895 ("Whistle-Blowers Act") and Fla. Stat. chs. 440.15(11) ("Full-Pay Statute").

compensatory and punitive damages "in excess of $5 million."[5]

Along with the complaint, Perez served the County with a Request for Admissions ("June 25 Request"), consisting of forty admissions.[6]  The request was, for the most part, a verbatim copy of the complaint, save a few minor changes, like inserting "Request for Admissions" in the place of "Complaint" and deleting the complaint's subsection titles, like "Factual Background" and "Claim 1."  Indeed, the June 25 Request is replete with the same typographical errors as the complaint and even includes such statements as, "This is a claim for deprivation of constitutional rights under color of state law . . ." and "Plaintiff incorporates by reference the allegations of paragraphs 1 through 16."

Though it did not answer the June 25 Request, the County, along with

---

[5] Perez also asked for a declaratory judgment that his rights had been violated and for permanent injunctive relief.  Perez appears to have abandoned his claim for such relief.

[6] Rule 36(a) states that "requests for admission may not be served before the time specified in Rule 26(d)."  Rule 26(d) specifies that, unless the parties agree, "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," which requires the parties to "confer to consider the nature and basis of their claims and defenses and the possibilities for a prompt settlement . . . and to develop a proposed discovery plan . . .."  Here, Perez served the June 25 Request with the complaint – well before the parties had met as required by Rule 26(f).  The County, however, did not object to the premature service.  Rather, the County contends that it never received the June 25 Request and points out that the summons and return indicate "only that the complaint was served and not th[is] first request or any other paper."  The district court found that the request had indeed been served with the complaint and noted that the June 25 Request "displays the same file stamp by the Clerk of Court as the original Complaint, civil cover sheet, and summons."  For purposes of this appeal, we treat the June 25 Request as having been served on the County in accordance with law and hold that the court's finding that the County received the request is not clearly erroneous.

5

Allsbury, filed answers to the complaint on July 14, 1997, and denied, or claimed to be without sufficient knowledge to answer, all but two of the complaint's allegations.[7]  Significantly, the defendants denied (1) that Allsbury "intentionally or negligently aimed his vehicle directly at [Perez], gunned the engine, and struck [him]" and (2) that the County has "a practice, custom, or policy allowing police officers to use unnecessary and unreasonable deadly force . . . in the apprehension of persons."  The defendants also pleaded several affirmative defenses, including contributory and comparative negligence and assumption of risk.  The answers were signed by Eric K. Gressman, Assistant County Attorney.

On September 12, 1997, the district court held a scheduling conference, attended by Perez's attorney and Gressman.  At the conference, in discussing the merits of the case, Gressman reiterated what had been stated in the defendants' answers: that "there is no policy or procedure that says that [officers may] use cars to run over suspects . . . unless deadly force is being used against [an officer]." Also at the conference, Perez's attorney stated that he had prepared written discovery requests, including requests for admissions, that, "according to Mr. Gressman, have not yet [been] served on him," but would be re-served "in the next

_____

[7] The defendants shared representation and jointly filed their answers and many of their subsequent motions.

couple of days." Following the conference, the district court entered a scheduling order, setting the pretrial conference for February 20, 1998, and requiring that all motions be filed by February 1 and that all discovery be completed by February 15.

On October 3, 1997, Perez served the County with a second request for admissions ("October 3 Request") consisting of seventy-two admissions.[8] This request was a verbatim copy of the June 25 Request with the addition of thirty-four new items. Most of the new items concerned the extent of Perez's injuries, e.g., "As a result of being hit by Seargent (sic) Allsbury's vehicle, Plaintiff suffered a broken leg." Along with the October 3 Request, Perez served the County with a request for production of documents and notices for the taking of depositions of several County officials and employees.

Time passed and, as the district court ultimately found, the County "failed to produce the requested documents within thirty days, did not produce the witnesses for the scheduled depositions, and failed to respond to the [October 3 Request] within thirty days." On January 6, 1998, therefore, Perez re-served the discovery requests, including the October 3 Request. Gressman does not dispute that he received the January 6 discovery request, which was stamped "Received by

---

[8] As with the June 25 Request, Gressman contends that he never received this second request; he stated as much in an affidavit he submitted to the district court. The district court, however, found otherwise, pointing to the certificate of service attached to the request, which is "clearly dated October 3, 1997." We accept this finding.

[Miami-]Dade County Attorney, January 6, 1998."

On January 27, having not received any response from the County as to his discovery requests, Perez moved the district court to strike the defendants' answers and enter a default judgment because the officials and employees had not appeared to testify at their scheduled depositions, or, in the alternative, to compel production of the witnesses and documents sought. As for the unanswered requests for admissions, Perez argued that, under Rule 36(a) of the Federal Rules of Civil Procedure, the matters should be deemed admitted because the County had not responded within the rule's thirty-day time limit.[9] Three days later, on January 30, 1998, Perez filed a motion for summary judgment on Count I, setting forth claims under section 1983, and asserted that the defendants, by failing to respond to the requests for admissions, "have admitted to all material facts and issues including that it is a custom, practice, and policy of the department to engage in the unnecessary use of deadly force."[10]

On February 3, 1998, before the district court ruled on Perez's two outstanding motions, the County finally responded to the June 25 Request,

---

[9] The relevant portions of Rule 36(a) is set out in infra note 22.

[10] Although the discovery requests, including the requests for admissions, had been directed only to the County, Perez sought summary judgment on the section 1983 claims as to both defendants.

denying, or asserting the inability to admit or deny, almost all of the items. Two days later, the County asked the court for more time to respond to Perez's other discovery requests, asserting that it had first received those requests on January 6, 1998, and that the deadlines for responding be calculated from the date of January 8. The district court granted the motion on February 10.

Soon after receiving the County's answer to the June 25 Request, Perez, on February 18, filed a motion "to Strike [the County's] Response to Request for Admissions, to Determine the Responses Insufficient, and to Order the Requests Admitted." In this motion, Perez once again argued that the court should deem as admitted the items from both the June 25 Request and the October 3 Request because the County had answered the June 25 Request over six months after service and had completely failed to answer the October 3 Request. Failing to act within thirty days of service, Perez reiterated, violates Rule 36(a) and requires that the court find the items admitted.

The day before the pretrial conference, held on February 20, 1998, Gressman filed, on behalf of both defendants, a response to Perez's summary judgment motion and, along with the response, finally answered the October 3 Request. The response to the summary judgment motion was timely because the court had extended the defendants' deadline to respond. The court had not, however,

extended the thirty-day time limit for answering the October 3 Request.

At the pretrial conference, after accepting as timely the defendants' response to Perez's summary judgment motion, the district court turned to Perez's motion to strike the County's answer to the June 25 Request. Before the court ruled, Gressman pointed out that the County had actually responded to both requests, albeit belatedly.[11] The district court, without acknowledging Gressman's statement, proceeded to deem as admitted several of the items from both the June 25 and October 3 Requests.[12] Among others, the district court found that the following key items had been admitted: 1) Sergeant Allsbury was, at all times relevant, a County police officer; 2) Allsbury believed Perez to be an African-American suspect and intentionally aimed his vehicle directly at Perez and struck him; 3) Perez was seriously injured as a result of the incident – suffering a permanent total disability; 4) the County had a practice, policy, or custom of allowing police officers to use unnecessary and unreasonable deadly force, including the use of motor vehicles to strike and detain subjects; and 5) Allsbury

---

[11] The County had responded to the June 25 Request on February 3 and to the October 3 Request on February 19.

[12] The district court did not deem as admitted all of the items from the two requests. The court struck a number of items that improperly called for a "legal conclusion," and struck others that were "uniquely within the knowledge of the plaintiff as opposed to the defendant."

struck Perez in accordance with the County's practice, policy, or custom.[13]

Gressman, in an unsuccessful attempt to salvage his clients' case, argued that "there is no prejudice [to Perez] whatsoever in [giving effect to] these late responses, if you want to call them late responses, to the requests for admissions." The court did not address his argument.

The indirect effect of the court's ruling was to strike the answers of both defendants. That is, by finding the items admitted, the court had effectively deemed "conclusively established" all of the elements of Perez's section 1983 claims, to wit: that Allsbury, acting under color of state law, intentionally struck Perez as a result of the County's "practice, policy or custom of allowing police officers to use unnecessary and unreasonable deadly force." See Monell v. Dep't of Social Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978) ("It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under section 1983."). With these elements conclusively established, the district

---

[13] In ruling that the remaining items were deemed admitted, the court gave one of two reasons. For those items the County had claimed to be without sufficient information with which to respond adequately, the court found that they were, instead, "fairly simply (sic) of being answered," and thus, it was improper "to say that the [County] doesn't have sufficient information." For all other items, the court simply stated that they "were unresponded to" and are therefore "deemed admitted."

11

court granted Perez's motion for summary judgment against both defendants, but only as to liability.[14]

On February 26, the defendants, still represented by Gressman, under seal, with leave of court, a motion to withdraw admissions.[15] In the motion Gressman submitted that, during the time period at issue, he was under the care of a psychologist for a serious mental health condition that had rendered him incapable of carrying out his professional responsibilities, including the representation of the County and Allsbury in the instant case. These circumstances alone, he suggested, were sufficient to grant the defendants the relief they were seeking. Alternatively, Gressman asserted, the court should grant relief because substantial doubts existed as to whether, as Perez was contending, the County maintained a "practice, policy, or custom" of running down suspects with police vehicles and whether Allsbury had struck Perez intentionally.[16] Therefore, Gressman pleaded, a manifest injustice

---

[14] The court used the County's admissions in granting Perez's summary judgment motion against Allsbury. This was obvious error. Because Allsbury was later dismissed as a defendant, however, the issue is moot.

[15] Although the requests for admissions had been directed to and answered by the County, Gressman filed the motion to withdraw on behalf of both defendants. Presumably, Gressman did so because the district court had granted summary judgment as to both the County and Allsbury as a result of the County's admissions.

[16] Gressman attached to his motion the deposition transcripts of various County officers, all of whom had been deposed by Perez during the period of February 9 through February 11. None of the depositions, according to Gressman, "indicate[s] that it was a policy of [the County] to run over African Americans or other fleeing suspects with a police car."

12

would result if the court adhered to its previous dispositive rulings.

The next day, the court entered a one-page order which confirmed the rulings it had made at the February 20 pretrial conference – granting Perez's "Motion to Strike [the County's] Response to Request for Admissions, to Determine the Responses Insufficient, and to Order the Requests Admitted" and Perez's "Motion for Summary Judgment." The court's order made no mention, however, of the motion Gressman had just filed under seal the day before.

On March 3, still without a ruling on his motion to withdraw, Gressman moved the court to reconsider its earlier rulings. The court finally ruled on April 9, denying the motion to reconsider as well as the motion to withdraw.[17] The court reasoned that Rule 36(a) of the Federal Rules of Civil Procedure "provides that matters set forth in a request for admissions are deemed admitted unless 'the party to whom the request is directed serves upon the party requesting the admission, a written answer within 30 days.'" The court further found that the County had received both requests months before they were answered and that Gressman's

---

[17] The court's order was in response to the following: (1) the defendants' February 26 "Motion to Amend or Withdraw Admissions, Clarify and Vacate and Request for Hearing on the same,"(2) the County's March 3 "Motion for Reconsideration," and (3) Allsbury's February 26 "Objection to Oral Ruling and Motion to Vacate and/or Clarify." The latter motion, made by Allsbury, objected to the court's summary judgment ruling because it established liability against Allsbury based on the County's failure to respond to requests for admissions directed only to the County.

13

personal problem "simply d[id] not justify his utter neglect of this case and flagrant disregard for the Federal Rules of Civil Procedure for over seven months."  In short, Gressman "ha[d] not provided an adequate excuse" to justify withdrawing the admissions or reconsidering the earlier rulings.

In a second order issued on April 9, the court reiterated its previous orders granting Perez summary judgment on the liability aspects of his section 1983 claims against the County and Allsbury and scheduled those claims for trial before a jury on April 27, 1998.  The trial began on that date.  After Perez rested, he dismissed Allsbury as a party defendant without prejudice.  The jury received the case on May 1, and, that same day, returned a verdict against the County, awarding Perez $5.7 million in compensatory damages.  After denying the County's motion for a new trial, the court entered judgment against the County for $5.7 million.

## C.

The County appealed the district court's judgment, but we dismissed the appeal for lack of appellate jurisdiction.  The court had neither disposed of Perez's remaining claims nor entered a partial final judgment on Perez's section 1983 claim pursuant to Rule 54(b) of the Federal Rules of Civil Procedure; consequently, the case lacked a final judgment within the meaning of 28 U.S.C. §

14

1291.[18]  See Perez v. Miami-Dade County, No. 98-5075, at 8 (11th Cir. March 1, 2001) (unpublished opinion).

On remand, the County moved the court to enter a final judgment on the Count I section 1983 claim under Rule 54(b).  The court did so on May 8, 2001.  One week later, Perez, relying on the district court's previous rulings in his favor, moved the court for summary judgment with respect to the issue of liability on his remaining claims – Counts IV, V, and VI.[19]  The County likewise moved for summary judgment on those counts on May 25.  On August 22, 2001, the court granted the County's motion and gave it final judgment on the three remaining counts.  Coupled with the Rule 54(b) judgment, the August 22 judgment brought an end to the controversy.

The County now appeals the judgment on Count I, and Perez cross-appeals the judgments on Counts IV, V, and VI.  Perez's assignments of error – laid out in the margin[20] – are without merit.  We therefore limit our discussion to the County's

---

[18]  Section 1291 states that courts of appeal "shall have jurisdiction of appeals from all final decisions of the district courts of the United States."

[19] Because Allsbury had been dismissed at trial as a defendant, Claims II and III were also dismissed.

[20] In his cross-appeal, Perez contends that the district court erred (1) in rejecting Count IV, set forth under the Whistle-Blowers Act, on the ground that he had not exhausted his administrative remedies; (2) in applying the intracorporate conspiracy doctrine to foreclose Count V, his claim under 42 U.S.C. § 1985; and (3) in concluding that his evidence was insufficient to support Count VI, the claim made under the Full-Pay Statute.  Finally, Perez

15

appeal, namely to the issue set out in the first paragraph of this opinion: whether the district court abused its discretion in denying the County's (and Allsbury's) motion, made pursuant to Rule 36(b) of the Federal Rules of Civil Procedure, to withdraw admissions.

III.

A.

At the outset, we emphasize that district courts are entitled to broad discretion in managing pretrial discovery matters. See, e.g., Johnson v. Board of Regents of Univ. of Ga., 263 F.3d 1234, 1269 (11th Cir. 2001) (citing Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1366 (11th Cir. 1997); United States v. McCutcheon, 86 F.3d 187, 190 (11th Cir. 1996)). "Given the caseload of most district courts and the fact that cases can sometimes stretch out over years, district courts must have discretion and authority to ensure that their cases move to a reasonably timely and orderly conclusion." Chrysler Int'l Corp. v. Chemaly, 280 F.3d 1358, 1360 (11th Cir. 2002). Indeed, we have repeatedly emphasized the responsibility of trial courts to manage pretrial discovery properly in order to avoid "a massive waste of judicial and private resources" and a loss of society's

---

contends that the County is barred from obtaining a "judgment as a matter of law" on those counts because it failed to assert the proper affirmative defenses and "to assert a Rule 50(a) motion" at the close of the evidence at trial.

16

"confidence in the courts' ability to administer justice." Johnson Enters. of

Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1333 (11th Cir. 1998)

(internal citation omitted); see also Byrne v. Nezhat, 261 F.3d 1075, 1132-34 (11th

Cir. 2001); Ebrahimi v. Huntsville Bd. of Educ., 114 F.3d 162, 165 (11th Cir.

1997); Pelletier v. Zweifel, 921 F.2d 1465, 1522 (11th Cir. 1991).

Nevertheless, "[t]his discretion [over discovery issues] is not wholly

unfettered." Chrysler Int'l Corp., 280 F.3d at 1360. We therefore review the

district court's denial of the County's motion to withdraw the admissions under the

abuse of discretion standard. See Dean v. Barber, 951 F.2d 1210, 1213 (11th Cir.

1992).[21]

B.

---

[21] Perez contends that we need not even consider the merits of the County's motion to withdraw because it was untimely under the district court's pretrial scheduling order. See Dedge v. Kendrick, 849 F.2d 1398, 1398 (11th Cir. 1988) (affirming the denial of a motion for summary judgment that was filed over one month after the pretrial deadline for filing and hearing motions). In particular, Perez asserts that the County (and Allsbury) filed the motion to withdraw on February 26, 1998, some twenty-six days after the district court's deadline for pretrial motions. Under Rule 16(b) of the Federal Rules of Civil Procedure, Perez points out, "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge." We note, however, that the district court considered the County's motion to withdraw (along with the County's motion for reconsideration) and decided it on the merits. Whether a motion was filed timely and is appropriate under a pretrial order is a question left to the district court's discretion. See, e.g., Spiller v. Ella Smithers Geriatric Ctr., 919 F.2d 339, 343 (5th Cir. 1990) (inferring that the district court modified its scheduling order by considering a motion after the order's cut-off date). We therefore defer to the district court's interpretation of its scheduling order rules, see Lockett v. Board of Educ., 111 F.3d 839, 843 n.2 (11th Cir. 1997), assume that the district court found that good cause had been shown, and consider the motion timely.

Rule 36 of the Federal Rules of Civil Procedure governs requests for admissions, allowing a party to serve on "any other party a written request for the admission . . . of the truth of any matters within the [general scope of discovery] set forth in the request that relate to statements or opinions of fact or of the application of law to fact." Fed. R. Civ. P. 36(a).[22] The purpose of the rule is "to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial." 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2252 (2d ed. 1994); Pickens v. Equitable Life Assurance Soc'y, 413 F.2d 1390, 1393 (5th Cir. 1969). The served party has thirty days after service to respond to the request – by a written answer "specifically deny[ing] the matter" or "set[ting] forth in detail the reasons why [it] cannot truthfully admit or deny the matter" or by objecting to the request. Fed. R. Civ. P. 36(a). If a party fails to respond within thirty days, then "[t]he matter is

_____

[22] The relevant portions of Rule 36(a) state:

A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters . . . set forth in the request that relate to statements or opinions of fact or of the application of law to fact. . . . The matter is admitted unless, within 30 days after service of the request, . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter . . . . The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. . . . If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served.

18

admitted." Id.

Once the matter is admitted, Rule 36(b) provides that it is "conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed. R. Civ. P. 36(b).[23] A court "may permit withdrawal or amendment [of an admission] when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits."[24] Id. Based on this language, we have held that district courts should apply a "two-part test" in deciding whether to grant or deny a motion to withdraw or amend admissions. Smith v. First Nat'l Bank, 837 F.2d 1575, 1577 (11th Cir. 1988). First, the court should consider whether the withdrawal will subserve the presentation of the merits, and second, it must

_____

[23] See the relevant portions of Rule 36(b) in supra note 1.

[24] Rule 36(b) also states that a court's permission is "[s]ubject to the provision of Rule 16 governing amendment of a pre-trial order." Fed. R. Civ. P. 36(b). Under Rule 16(e), the provision on amendments of pretrial orders, the district court must enter an order "reciting the action taken" at the conclusion of a pretrial conference. This order "shall be modified only to prevent manifest injustice." Fed. R. Civ. P. 16(e). Thus, if the motion to withdraw would have modified a final pretrial order, then the County must show that the withdrawal was necessary to prevent manifest injustice.

Here, however, the motion to withdraw was filed on February 26, one day before the district court entered the order granting Perez's motion to strike and motion to deem the items admitted. Even assuming that the February 27 order was a final pretrial order, which is not obvious on its face, the motion to withdraw did not seek to modify that order, but rather, to modify the action taken at the pretrial conference. Because the motion would not have modified a final pretrial order, Rule 16(e) is inapplicable.

19

determine whether the withdrawal will prejudice the party who obtained the admissions in its presentation of the case.  Id.; Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir. 1995); FDIC v. Prusia, 18 F.3d 637, 640 (8th Cir. 1994).

Perez contends, however, that applying the two-part test is permissive and that Rule 36(b), in stating that a court "may" allow a withdrawal or amendment, does not require a district court to grant such motions even if the two-part test is met.  For this proposition, Perez cites Carney v. IRS, 258 F.3d 415, 419 (5th Cir. 2001), which stated, in dictum, that, "[e]ven when these two factors are established, a district court still has discretion to deny a request for leave to withdraw or amend an admission."[25]  We do not deny that Rule 36(b) vests the district court with discretion in ruling on motions to withdraw or amend admissions.  We disagree with Perez, however, to the extent that he argues that such discretion is unfettered.  See supra part III.A (discussing the power of appellate courts to review discovery decisions made by district courts, albeit with deference).

Indeed, we read Rule 36(b) as granting a district court discretion but then specifying exactly how that discretion is to be exercised.  See, e.g., Durability Inc.

---

[25] The statement is dictum because the court affirmed the district court's denial of the party's motion to withdraw the admissions based on another reason – that the party had never filed a motion for leave to withdraw the admissions as required by Rule 36(b).  See Carney, 258 F.3d at 419-20.

v. Sovereign Life Ins. Co., 212 F.3d 551, 556 (10th Cir. 2000) ("The court's focus must be on the effect upon the litigation and prejudice to the resisting party rather than . . . on the moving party's excuses for an erroneous admission.") (citing 10A Federal Procedure L. Ed. § 26.500 (1988) (internal mark omitted)); Asea, Inc., v. Southern Pac. Transp. Co., 669 F.2d 1242, 1248 (9th Cir. 1981) ("In a proper case . . . such as when an admission has been made inadvertently, Rule 36(b) might well require the district court to permit withdrawal."); Mid Valley Bank v. North Valley Bank, 764 F. Supp. 1377, 1391 (E.D. Cal. 1991) ("[A]lthough the motion [to withdraw admissions] is, as the parties acknowledge, directed to the sound discretion of the court, the discretion should not be exercised in terms of the defaulting party's excuses, but in terms of the effect upon the litigation and prejudice to the resisting party.") (internal citations omitted). Rule 36(b)'s two-part test is much more than merely hortatory; it "emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice." Smith, 837 F.2d at 1577-78 (quoting Fed. R. Civ. P. 36 advisory committee's note) (emphasis added).

While we stop short of holding that movants have "an absolute right . . . to have [their] admissions withdrawn," Asea, 669 F.2d at 1248, we nonetheless

21

believe that, to best fulfill the purposes of Rule 36, a district court must abide by the two-part test of Rule 36(b).  We hold, therefore, that a district court abuses its discretion under Rule 36(b) in denying a motion to withdraw or amend admissions when it applies some other criterion beyond the two-part test – or grossly misapplies the two-part test – in making its ruling.  See Gutting v. Falstaff Brewing Corp., 710 F.2d 1309, 1313 (8th Cir. 1983) ("Regardless of the intentions of the district court to sanction [the party], we find the district erred in not considering the factors set out in [R]ule 36(b).").

## C.

Here, the district court denied the defendants' motion to withdraw admissions without even discussing the two-part test of Rule 36(b).  The court, in fact, never even mentioned Rule 36(b) at all; rather, it focused on the thirty-day time limit from Rule 36(a), noted that the County had missed the deadlines for both requests, and reaffirmed its finding that the items had been deemed admitted.  Even though, in their motion to withdraw, the defendants had argued that Perez had shown no prejudice, the only other reason the district court gave for denying the withdrawal was the inadequacy of the County's excuse for its belated responses.  Specifically, the court noted that the personal problems of Gressman, the County attorney, "simply do[] not justify [the County's] utter neglect of this case and

22

flagrant disregard for the Federal Rules of Civil Procedure for over seven months."

Denying the motion to withdraw based on this reasoning (or lack thereof) was an abuse of discretion. Moreover, had the court properly applied the two-part test mandated by Rule 36(b), it would have found that withdrawal was not only appropriate but necessary.

1.

The first prong of the two-part test from Rule 36(b) calls for a determination of whether "the presentation of the merits will be subserved" by allowing a withdrawal or amendment of the admissions. This part of the test "emphasizes the importance of having the action resolved on the merits," Smith, 837 F.2d at 1577, and is "satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case," Hadley, 45 F.3d at 1348. In Hadley, for example, the court found that two of the admissions "essentially admitted the necessary elements [of the claims];" therefore, withdrawal was proper. Id.

In the instant case, the items the court had deemed admitted conclusively established the liability of both defendants under 42 U.S.C. § 1983. For instance, the court found that the County had admitted that it had "a practice, policy, or custom of allowing police officers to use unnecessary and unreasonable deadly force, including the use of motor vehicles to strike and detain subjects." A

23

municipality's practice, policy, or custom is not some tangential factual matter in a section 1983 case; it is the core element and is, consequently, often the most disputed. Deeming this element admitted took the wind out of the defendants' sails and effectively ended the litigation.

Thus, granting the motion to withdraw the admissions would have certainly aided in the "'ascertainment of the truth and the development of the merits.'" Smith, 837 F.2d at 1577 (quoting with approval the district court's opinion in that case); see also Manatt v. Union Pac. R.R. Co., 122 F.3d 514, 517 (8th Cir. 1997) ("In the circumstances of this case, the prospect of deeming the controverted fact as having been admitted seems to be anathema to the ascertainment of the truth.") (citations and internal marks omitted). The first prong of the two-part test is therefore easily met.

## 2.

Rule 36(b)'s second prong requires the court to ascertain whether the non-moving party would be prejudiced by a withdrawal or amendment of admissions. We have before explained:

> The prejudice contemplated by the Rule is not simply that
> the party who initially obtained the admission will now have
> to convince the fact finder of its truth. Rather, it relates to the
> difficulty a party may face in proving its case, e.g., caused by
> the unavailability of key witnesses, because of the sudden need
> to obtain evidence with respect to the questions previously

answered by the admissions.

Smith, 837 F.2d at 1578 (quoting Brook Village N. Assoc. v. General Elec. Co., 686 F.2d 66, 70 (1st Cir. 1988)).  For this reason, a court is more likely to find prejudice when a party seeks to withdraw its admissions once trial has already begun.  See, e.g., 999 v. C.I.T. Corp., 776 F.2d 866, 869 (9th Cir. 1985) ("Had [the defendant] made this argument [that there was no prejudice] while moving for withdrawal of the admission before trial, it would have been more persuasive.").

Although the motion to withdraw the admissions was made before trial, Perez nonetheless argues that a withdrawal would have been prejudicial.  Perez unconvincingly asserts that he "rel[ied] upon the admissions in his preparation for trial," an astonishing claim in light of the facts.[26]  Indeed, the defendants, in denying the allegations of the complaint (a document that mirrors the bulk of the requests for admissions), maintained from the very beginning that they would contest Perez's core allegations.  Moreover, at the scheduling conference held on September 12, 1997, Gressman reiterated what had been stated in the defendants'

---

[26] In his reply brief, Perez asserts a new reason for finding prejudice – that Sergeant Allsbury died on December 19, 1999.  The prejudice inquiry, however, must focus on the harm Perez would have incurred in late February or early March 1998 had the district court granted the defendants' motion to withdraw.  Allsbury's death, an event occurring long after the motion was filed, in no way prejudiced Perez.  Moreover, even if we shift our focus to the present, we find no prejudice because Perez deposed Allsbury before the trial, cross-examined him at the trial, and, at the close of the evidence, dismissed him as a defendant.

answers: that "there is no policy or procedure that says that [officers may] use cars to run over suspects . . . unless deadly force is being used against [an officer]."

Finally, attached to Perez's "Unilateral Pretrial Stipulation,"[27] filed on February 18, 1998, is a section entitled "Defendants' Statement of Facts," in which the defendants maintained that the County had no "policy or procedure . . . authorizing use of deadly force against a fleeing suspect who does not pose a risk of causing

---

[27] Perez filed the Unilateral Pretrial Stipulation under Southern District of Florida Local Rule 16.1(F), which is entitled "Unilateral Filing of Pretrial Stipulation Where Counsel Do Not Agree." That rule states:

> If for any reason the pretrial stipulation is not executed by all counsel, each counsel shall file and serve separate proposed pretrial stipulations not later than five days prior to the pretrial conference, or if no pretrial conference is held, five days prior to the call of the calendar, with a statement of reasons no agreement was reached thereon.

(Emphasis added). Perez's stipulation was untimely because it was filed two days prior to the pretrial conference. Presumably for that reason, the court made no substantive use of the stipulation during the pretrial conference or in any of the orders relevant to the defendants' motion to withdraw.

The introductory paragraph of Perez's stipulation stated:

> Defendants have provided witness lists and exhibit lists, which Plaintiff does not believe were filed in good faith. Defendants refuse to make meaningful stipulations of facts, despite having admitted virtually every relevant fact in this litigation. The uncontested facts set forth herein are based upon the unanswered October 3, 1997, Request for Admissions, which also provided the basis for Plaintiff's previously filed motion for summary judgment.

The reason why the defendants refused to "make meaningful stipulations of facts" is, of course, that the defendants had steadfastly denied Perez's allegations. Because the court appears to have disregarded Perez's stipulation, we do not consider it, except to the extent that it shows that Perez was aware that the defendants disputed the existence of a practice, custom, or policy to run down suspects with police cars.

26

the death of an officer." The same document also reveals that the County disputed whether Sergeant Allsbury had intentionally hit Perez with his car.

Because Perez knew from the very beginning – and continued to be made aware – that he would have to prove many of the elements of his case now deemed admitted, he would have suffered no prejudice had the court allowed a withdrawal. In fact, Perez had been engaging in discovery all along, albeit with some resistance by the County, and had only relied on the admissions for six days – from February 20 to February 26, the day on which the defendants requested a withdrawal. Certainly, allowing an amendment or withdrawal at that early point would not have created a "sudden need" for Perez to obtain evidence. Moreover, at the time the defendants requested the withdrawal, a trial on the merits had not yet begun; the district court could have simply extended the discovery deadlines – as it previously had done – to enable Perez to prove his case. The only prejudice Perez would have likely suffered would have been the inconvenience in having to gather evidence, and this "[does] not rise to a level of prejudice that justifie[s] a denial of the withdrawal motion." Hadley, 45 F.3d at 1349.[28]

---

[28] Yet another reason exists for finding that Perez would not have suffered prejudice had the court allowed the withdrawal: the County's admissions could not have possibly bound Allsbury, who, at the time the motion to withdraw was made, was still a defendant in the case. Of course, the district court, as we pointed out in note 15, improperly held that the County's admissions established liability against Allsbury. Had the court ruled correctly, however, and found that the admissions were not binding on Allsbury, then a trial on Allsbury's liability would

27

Perez relies heavily on our decision in United States v. 2204 Barbara Lane, 960 F.2d 126 (11th Cir. 1992), in which we affirmed the award of summary judgment for the government in a civil forfeiture action based on unanswered admissions. This reliance is misplaced. Unlike the instant case, the defendant in 2204 Barbara Lane never disputed the underlying facts. In affirming the grant of summary judgment, we specifically noted that the defendant had conceded the essential element of the forfeiture action – that his property was used to sell cocaine. See id. at 129. Here, however, Perez had been warned all along that he would have to prove the most essential elements of his section 1983 claims; thus, we cannot say that he would have suffered prejudice had the court allowed the defendants to withdraw the admissions.

## D.

We conclude with a comment on Rule 36 and Perez's use of requests for admissions in this case. Essentially, Rule 36 is a time-saver, designed "to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial." 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2252 (2d ed. 1994) (emphasis added).

---

have still had to be held, thus negating any argument Perez might have had in establishing prejudice.

28

That is, when a party uses the rule to establish uncontested facts and to narrow the issues for trial, then the rule functions properly. When a party like Perez, however, uses the rule to harass the other side or, as in this case, with the wild-eyed hope that the other side will fail to answer and therefore admit essential elements (that the party has already denied in its answer), the rule's time-saving function ceases; the rule instead becomes a weapon, dragging out the litigation and wasting valuable resources.

For this reason, we believe that it is inappropriate (as well as prohibited by Rule 36 itself, see Fed. R. Civ. P. 36(a)) for a plaintiff to serve a request for admissions along with the complaint. It is simply too early for the defendant, having not yet received the allegations, to perceive what facts should or should not be contested. Once a defendant has answered, moreover, it continues to be inappropriate for a plaintiff to re-serve the complaint in the form of a request for admissions in order to "require the defendant to admit or deny nearly every paragraph [of a complaint it has already answered]." E.g., Downs v. Brasted, No. 92-1611, 1993 WL 273370, at *1(D. Kan. June 28, 1993); Brenord v. Catholic Med. Ctr., 133 F. Supp. 2d 179, 193 (E.D.N.Y. 2001). But see United States v. Young, No. 87 CIV 9159, 1990 WL 135734, at *2 (S.D.N.Y. Sept. 10, 1990) ("The mere fact that a party has previously denied the matter about which an

admission is sought does not obviate the need to respond to a Rule 36 request for admissions."). This is especially true here, where the defendants had denied Perez's core allegations – that the County had a "practice, custom, or policy" of running down suspects in police cars and that Allsbury intentionally struck Perez – in the answers and again at the scheduling conference. Perez's continued service of the same request for admissions in the face of these denials was an abuse of Rule 36.

Rule 37 of the Federal Rules of Civil Procedure sheds further light on Rule 36. According to Rule 37(c)(2), a party may properly deny the items in a request for admissions – without fear of sanctions – as long as

> (A) the request was held objectionable pursuant to Rule 36(a), or
> (B) the admission sought was of no substantial importance, or
> (C) <u>the party failing to admit had reasonable ground to believe that the party might prevail on the matter</u>, or
> (D) there was other good reason for the failure to admit.

Fed. R. Civ. P. 37(c)(2) (emphasis added).[29] That is to say, even had Perez

---

[29] Rule 37(c)(2) provides in relevant part:

> If a party fails to admit . . . the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves . . . the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (A) the request was held objectionable pursuant to Rule 36(a), or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (D) there was other

30

prevailed at a trial on the liability issues of his section 1983 claims, thus establishing that the County did indeed have such a "policy, practice, or custom," it would have been entirely proper for the County to deny its existence in the requests for admissions if the County reasonably believed it might prevail on the matter. The implicit message of Rule 37 is, therefore, that issues <u>obviously subject to dispute should be resolved at trial</u>, not in a discovery motion.

IV.

In sum, we find that the district court failed to apply properly the two-part test of Rule 36(b) in considering the defendants' motion to withdraw admissions, thereby abusing its discretion. Moreover, had the court applied the test correctly, it would have ruled in the defendants' favor. Because the court granted Perez's summary judgment motion on the section 1983 claims based on the items deemed admitted, we VACATE the judgment and REMAND the case for further proceedings.

---

good reason for the failure to admit.