**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-11568
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

OTIS FURMAN CRABBE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:24-cr-14037-DMM-1

_____

Before LUCK, LAGOA, and MARCUS, Circuit Judges.

PER CURIAM:

Otis Crabbe appeals his conviction for possession with intent to distribute 50 grams or more of methamphetamine. On appeal, he argues that: (1) the district court erred in denying his motion to

suppress his stationhouse interrogation; (2) the district court abused its discretion by allowing the government to present expert testimony; (3) the district court clearly erred in denying his challenge to the government's peremptory strike of a Black venireman; and (4) the district court abused its discretion in declining to provide a jury instruction on the lesser-included offense of simple possession.  After thorough review, we affirm.

## I.

We review the denial of a motion to suppress as a mixed question of law and fact, with conclusions of law reviewed de novo and findings of fact reviewed for clear error. *United States v. Thomas*, 160 F.4th 1177, 1181 (11th Cir. 2025).  Facts are construed in the light most favorable to the party that prevailed in the district court. *Id*.  "When reviewing the denial of a motion to suppress, [we are] not restricted to the evidence presented at the suppression hearing and instead consider[] the whole record." *United States v. Epps*, 613 F.3d 1093, 1097 (11th Cir. 2010).  We review de novo whether a statement was voluntary, giving deference to the district court's factual findings. *United States v. Lall*, 607 F.3d 1277, 1285 (11th Cir. 2010).  The government must establish voluntariness of a challenged confession by a preponderance of the evidence. *Id*.

We generally review discovery violations under Fed. R. Crim. P. 16 for abuse of discretion. *United States v. Hastamorir*, 881 F.2d 1551, 1559 (11th Cir. 1989).  A district court's decision on whether to give a lesser-included offense instruction also is reviewed for abuse of discretion. *United States v. Gutierrez*, 745 F.3d

463, 470 (11th Cir. 2014).  The court abuses its discretion in declining to give an instruction on a lesser-included offense when "the evidence would permit a rational jury to find the defendant guilty of the lesser offense and not the greater."  *Id.* (citation modified).

When we review the district court's ruling on a challenge made pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), the district court's determination "is entitled to great deference, and must be sustained unless it is clearly erroneous."  *United States v. Robertson*, 736 F.3d 1317, 1324 (11th Cir. 2013) (citation modified).  Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.  *United States v. McPhee*, 336 F.3d 1269, 1275 (11th Cir. 2003).

## II.

First, we are unpersuaded by Crabbe's claim that the district court erred in denying his motion to suppress his stationhouse interrogation.  The Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), protects a defendant's Fifth Amendment right against self-incrimination by requiring that law enforcement officers advise the person subject to custodial interrogation of certain rights and to respect the person's invocation of those rights.  *United States v. Woods*, 684 F.3d 1045, 1055 (11th Cir. 2012).

A defendant may waive his *Miranda* rights if the government proves by a preponderance of the evidence that the waiver was made voluntarily, knowingly, and intelligently.  *United States v. Bernal-Benitez*, 594 F.3d 1303, 1318 (11th Cir. 2010).  Voluntariness requires that the waiver was the result of "a free and deliberate

choice rather than intimidation, coercion, or deception." *Id.* (citation modified). The waiver must be made with full awareness of the nature of the rights being waived and the consequences of that decision. *Id.* A court may conclude that *Miranda* rights were waived only if the totality of the circumstances demonstrates both free choice and the requisite level of comprehension. *Id.* A defendant is deemed to have impliedly waived his *Miranda* rights if the prosecution shows he both understood his rights and made an uncoerced statement. *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010).

"While the failure to comply with *Miranda* creates a presumption that a confession was not voluntary, an examination of the totality of the circumstances is necessary to determine whether the confession was actually voluntarily given." *Lall*, 607 F.3d at 1285. Threats of violence or promises of leniency can render a statement involuntary. *Id.* The use of deception to obtain a confession is another important factor. *Id.* In *Lall*, we held that where an officer promised a defendant that nothing he said would be used to prosecute him, his subsequent confession was rendered involuntary because it completely undermined the previously-administered *Miranda* warning's prophylactic effect. *Id.* at 1287. By contrast, in *United States v. Nash*, we held that an officer had not illegally induced the defendant's ensuing confession where an officer promised to make it known to the prosecutor that the defendant had cooperated, encouraged him to tell the truth, and said that defendants who cooperate generally received better sentences. 910 F.2d 749, 752–53 (11th Cir. 1990). We explained that because the officer had not promised the defendant a reduced sentence, the officer

only had afforded him the opportunity to make an informed decision about the advantages of cooperating with the government. *Id.*

Here, the government met its burden of showing that Crabbe's statements during his custodial interrogation were voluntary. For starters, Crabbe concedes in his reply brief that Martin County Sheriff's Office ("MCSO") Detective Gitlin provided him adequate *Miranda* warnings prior to his arrest and custodial interrogation. Further, the record reflects that Crabbe implicitly waived his *Miranda* rights -- after being read his rights, Detective Gitlin told Crabbe that he could exercise his rights at any time, and Crabbe affirmed that he understood his rights, said he had no questions about his rights, and then voluntarily continued speaking with officers. *Berghuis*, 560 U.S. at 384. When Crabbe later said, "I just gotta take the Fifth," Detective Gitlin asked if he wanted to cease his interrogation, and Crabbe responded, "I'd like to help you, but I'm going to jail today no matter what, so there's nothing I can do," and continued speaking. In other words, Crabbe was "freely discussing things with law enforcement" after he was Mirandized, and the district court did not err in finding that Crabbe voluntarily waived his *Miranda* rights. *Bernal-Benitez*, 594 F.3d at 1318.

Moreover, the totality of the circumstances shows that Crabbe's stationhouse interrogation was voluntary. Crabbe claims that during his drive to the station, MCSO Detective Mercado said, "if you work with us, we'll work with you." Nevertheless, it is clear that Crabbe was not offered a quid pro quo arrangement or co-

erced by any promise Mercado made during the ride.  Both Detectives Gitlin and Mercado testified that Mercado intended to cultivate Crabbe as a source to build a case but was ultimately unable to do so; no promise was made.  Further, in a video recording of the stationhouse interview, Detective Gitlin repeatedly reminded Crabbe they could not promise anything to him -- "[w]e can't promise you anything, but we work with you, you work with us" and "the attorney's office is the one that would -- you know, we can't make promises as far as the agency, you know we can't promise you anything."  Detective Gitlin added that there was "probably not" a chance of Crabbe leaving police custody that day, reiterating that "we're talking long-term help . . . yes, you're not going to avoid the ride, but you can avoid things down the road."

As we've held, a police officer does not coerce a confession by merely noting that cooperating with law enforcement may provide a defendant some benefit later on, so long as the officer does not guarantee a reduced sentence, which Detective Mercado never did.  *Nash*, 910 F.2d at 752–53.  Because the government satisfied its burden of showing by a preponderance of the evidence that the confession was not coerced, we affirm the district court's denial of Crabbe's motion to suppress.  *Thomas*, 160 F.4th at 1181.

## III.

Nor do we find merit to Crabbe's claim that the district court abused its discretion by allowing the government to present expert testimony.  We "will not reverse a conviction based on a Rule 16

expert disclosure violation unless the violation prejudiced the defendant's substantial rights." *United States v. Stahlman*, 934 F.3d 1199, 1222 n.10 (11th Cir. 2019). A determination of actual prejudice "will often turn on the strength of the Government case." *United States v. Rodriguez*, 799 F.2d 649, 652 (11th Cir. 1986). Substantial prejudice exists when a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense, or if the mistake substantially influences the jury. *United States v. Mosquera*, 886 F.3d 1032, 1045 (11th Cir. 2018).

When a discovery violation occurs under Rule 16, there is no automatic consequence; relief for the violation lies within the discretion of the trial court. *Id.* If a violation occurs, the district court should impose the least severe sanction necessary to ensure prompt and complete compliance with its discovery orders. *United States v. Turner*, 871 F.2d 1574, 1580 (11th Cir. 1989). In choosing a sanction, the court should consider the reasons for delay in complying with the discovery order, whether there was any bad faith by the prosecution, prejudice to the defendant, and the availability of a means to cure the prejudice. *Id.* District courts have "unquestionable" authority to control their own dockets, *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) (citation modified), which includes broad discretion over the management of discovery, *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002).

Under Rule 16(a)(1)(G), the government must disclose the testimony of its expert witness upon the defendant's request within a time set by the court, and that "[t]he time must be sufficiently

before trial to provide a fair opportunity for the defendant to meet the government's evidence." Fed. R. Crim. P. 16(a)(1)(G)(i)–(ii). Under the Southern District of Florida's Local Rules, initial expert disclosures are due within 14 days of their demand, and complete expert disclosures are due no later than 21 days before the commencement of trial. S.D. Fla. L.R. 88.10(o).[1]

---

[1] The Local Rules provide in relevant part:

> (3) When discovery concerning expert witnesses has been requested and is required to be made pursuant to Fed. R. Crim. P. 16(a)(1)(G) or Fed. R. Crim. P. 16(b)(1)(C), it shall be made as follows, or at such other time as ordered by the court:

>> (A) An initial written summary of the anticipated testimony that is subject to disclosure shall be provided to the requesting party within fourteen (14) days of that party's written request pursuant to Fed. R. Crim. P. 16(a)(1)(G)(i) or Fed. R. Crim. P. 16(b)(1)(C)(i), except that the summary need not be provided to the requesting party earlier than fourteen (14) days after the arraignment. That summary must provide a synopsis of: the anticipated opinions, the bases and reasons for those opinions, and either the anticipated expert witness's qualifications, if the particular expert witness has already been selected, or the type of expert witness who will be providing the anticipated testimony.

>> (B) The more-detailed information required pursuant to Fed. R. Crim. P. 16(a)(1)(G) or Fed. R. Crim. P. 16(b)(1)(C) must be disclosed:

>>> (i) no later than twenty-one (21) days before the commencement of trial for testimony that the government intends to present at trial during its case-

25-11568                 Opinion of the Court                 9

Here, the district court did not abuse its discretion by allowing the government to present the testimony of Drug Enforcement Administration ("DEA") Senior Forensic Chemist Carmen Salmon, despite its untimely expert disclosure under Rule 16. As an initial matter, we agree with Crabbe that the government's final disclosure was untimely because it was filed only 5 days -- instead of the required 21 days -- before the commencement of trial. *Id.* However, this disclosure was not incomplete -- it contained Salmon's CV, a list of the trials she'd testified in within the last four years, and the lab report on which her opinion would be based. While Crabbe claims that the government failed to provide the "bases and reasons" for Salmon's opinion, as required by Rule 16(a)(1)(G)(iii), it satisfied this requirement by attaching the lab report analyzing the methamphetamine found in Crabbe's vehicle, which was the

---

in-chief, except that this disclosure need not be provided earlier than fourteen (14) days after the arraignment;

. . . .

A defendant or the government may request, pursuant to this rule and Fed. R. Crim. P. 16(d) or Fed. R. Crim. P. 16.1(b), that the court exercise its discretion and alter the default deadlines established by this rule. Any such request shall set forth the reasons (for example, to ensure sufficient time to provide effective assistance of counsel, prepare adequately for trial, find and secure an expert witness, or prepare the required expert disclosure) and the factual circumstances that warrant the requested modification of the expert discovery timetable.

S.D. Fla. L.R. 88.10(o).

only basis for her trial testimony.  Because she did not base her testimony on anything else, the "bases and reasons" for her opinion were included in the government's expert disclosure and it was not incomplete.

Despite the untimeliness of its expert disclosure, the district did not abuse its broad discretion in declining to strike the government's expert witness.  In its decision, the court considered the reason for the government's delay -- that Salmon had a conflicting subpoena -- and assessed whether allowing the government to employ its expert witness at trial would result in harm to Crabbe.  For his part, Crabbe conceded that he "cannot say precisely what he would have done differently" at trial if the government's expert disclosure was timely produced.  The district court observed that Crabbe received the laboratory report well ahead of trial and characterized the defendant's challenge as "just kind of a gotcha kind of thing," concluding that this wasn't "a real issue."  On this record, we cannot say that the district court abused its discretion in finding that Crabbe's expert discovery challenge was a mere "gotcha" and declining to strike the government's expert.  *See Perez*, 297 F.3d at 1263; *Turner*, 871 F.2d at 1580.  And because the district court did not abuse its discretion in declining to strike the government's expert witness, we need not analyze whether Crabbe's substantial rights were violated.  *See Mosquera*, 886 F.3d at 1045.

**IV.**

We likewise are unconvinced by Crabbe's claim that the district court clearly erred in denying his challenge to the government's peremptory strike of a Black venireman. Peremptory challenges generally may be exercised on any legitimate ground, even if the ground is not reasonable. *United States v. Tokars*, 95 F.3d 1520, 1533 (11th Cir. 1996). The purposeful and deliberate denial of a member of a minority, however, to participate as a juror in the administration of justice, on account of race, violates the Equal Protection Clause. *Batson*, 476 U.S. at 84.

*Batson* established a three-part test to assess the validity of challenges to peremptory strikes. *United States v. Walker*, 490 F.3d 1282, 1291 (11th Cir. 2007). Under *Batson* step one, the party challenging a peremptory strike "must first make a prima facie showing that the striking party employed a peremptory challenge on the basis of race." *Robertson*, 736 F.3d at 1325. The district court must then "consider 'all relevant circumstances' supporting the challenging party's assertion of discrimination," like "the striking party's 'pattern' of striking venire members of a particular race, or making questions or statements during *voir dire* to members of a particular race that support the inference of a discriminatory purpose." *Id.* at 1325–26 (quoting *Batson*, 476 U.S. at 96–97). The defendant's race and ethnicity and the remaining jury pool's racial composition are also relevant circumstances to consider. *Id.* at 1326. The court should not proceed to *Batson* step two -- requiring the striking party to explain its peremptory strike -- "until the court is satisfied that the challenging party has made its prima facie case of discrimination." *Id.* In *Robertson*, relevant circumstances existed for the court

to proceed to *Batson* step two where (1) the defendant -- a white supremacist -- sought to strike a Black venireman, (2) the defendant was on trial for committing a violent crime against a Black victim, and (3) there were only three Black veniremen. *Id.* at 1327.

Step two merely requires an explanation for the strikes that is legitimate, reasonably specific, and facially nondiscriminatory. *United States v. Folk*, 754 F.3d 905, 914 (11th Cir. 2014); *United States v. Alston*, 895 F.2d 1362, 1366 (11th Cir. 1990). But counsel must "stand or fall on the plausibility of the reasons" given before the trial court. *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005). At step three, the burden shifts to the defendant to prove purposeful discrimination by a preponderance of the evidence. *Madison v. Comm'r, Ala. Dep't of Corr.*, 761 F.3d 1240, 1250-51 (11th Cir. 2014).

Here, the district court did not clearly err in finding that Crabbe failed to make a prima facie case of impermissible discrimination. As background, the parties mutually agreed during jury selection to strike one of two Black members of the venire. The government then used a peremptory strike for the only remaining Black man in the venire, to which Crabbe objected on the grounds that the government demonstrated "a pattern of -- they have now struck 100 percent of the [B]lack males on the jury." Thus, Crabbe's *Batson* challenge was premised on a pattern of striking Black men from the jury pool.

Crabbe argues to us that the district court improperly denied his *Batson* challenge because he failed to show a pattern of discrimination. However, under our case law, the court properly based its

finding on the grounds upon which Crabbe made his prima facie showing, and a "'pattern' of striking venire members of a particular race" is one of the "relevant circumstances" upon which the court could base its ruling. *Robertson*, 736 F.3d at 1325–26. As the court found, a "pattern" of one is "hardly a pattern." Further, while the court expressly denied Crabbe's *Batson* challenge because it "d[id not] think there's any kind of pattern or basis to inquire as to [juror] 20," additional circumstances cut against his challenge. In his prima facie challenge he did not show that the government made comments about race that could support an inference of discrimination. Nor did he address that he is white, another appropriate consideration at *Batson* step one. *Id.* at 1326. On this record, we cannot say the district court clearly erred in finding that he failed to make a prima facie showing of discrimination, and we affirm.

## V.

Finally, we are unconvinced by Crabbe's argument that the district court abused its discretion in declining to provide a jury instruction on the lesser-included offense of simple possession. "For an offense to be a lesser-included offense of a parent offense, its elements must be contained within the elements of the parent offense, i.e., the elements of the prospective lesser-included offense must be a subset of those contained in the parent offense." *United States v. Stone*, 139 F.3d 822, 839 n.15 (11th Cir. 1998).

It is "unlawful for any person knowingly or intentionally to possess a controlled substance." 21 U.S.C. § 844(a). Under the greater offense of possession with intent to distribute, it is unlawful

to "knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." *Id.* § 841(a). "[S]imple possession under 21 U.S.C. § 844(a) . . . is a lesser included offense of possession with intent to distribute under 21 U.S.C. § 841(a)(1)." *United States v. Carcaise*, 763 F.2d 1328, 1334 n.20 (11th Cir. 1985). In evaluating whether there is sufficient evidence to support a conviction for possession with intent to distribute, we have held that the quantity of drugs, "the lack of paraphernalia used to consume the drug," and the presence of multiple plastic bags provide evidence from which a jury can infer the defendant's intent to distribute. *United States v. Mercer*, 541 F.3d 1070, 1076 (11th Cir. 2008).

In *United States v. Brown*, we affirmed the district court's decision declining to provide a lesser-included offense instruction for simple possession. 26 F.3d 119 (11th Cir. 1994). We held that "[n]o rational jury could have concluded, based on the evidence, that [the] defendant intended to possess the cocaine for purely personal use," where the defendant was found with 2 kilograms of 93% pure cocaine. *Id.* at 120. Our conclusion "[wa]s strengthened by the fact that [the] defense rested *not* on a theory that corresponds to the requested instruction, that is, that defendant had no intent to distribute. Rather, defendant argued at trial that he lacked knowledge of the cocaine." *Id.* We explained, "[w]hen a defendant relies on an exculpatory defense that, if believed, would lead to acquittals on both the greater and lesser charges, it is no abuse of discretion to refuse to instruct the jury on a lesser included offense." *Id.*

Similarly here, the district court did not abuse its discretion by declining to instruct the jury on the lesser-included offense of simple possession.  For starters, the parties agree that simple possession is a lesser-included offense of possession with intent to distribute, so Crabbe's challenge centers solely on whether a rational jury could find him guilty of simple possession but acquit him for possession with intent to distribute. *Gutierrez*, 745 F.3d at 470.

However, based on the evidence presented at trial and Crabbe's own defense theory, no rational jury could have concluded that Crabbe should be acquitted of possession with intent to distribute.  First, the government provided sufficient evidence to prove that Crabbe possessed methamphetamine with intent to distribute.  In Crabbe's stationhouse interrogation, he said he delivered methamphetamine on behalf of at least two drug suppliers, he dropped off pre-packaged quantities at various locations, received smaller portions to sell to others, and exchanged small portions with people in exchange for help around the house.  Thus, Crabbe admitted he knowingly possessed methamphetamine and intended to distribute it to others.  *See* 21 U.S.C. § 844(a).  He claims that a rational jury could disbelieve the majority of his statements about drug-running, but the evidence as a whole corroborated Crabbe's confession. DEA Forensic Chemist Salmon opined that a laboratory analysis of the substance in Crabbe's vehicle was nearly 80 grams of 96% pure methamphetamine, and Detective Mercado testified that the methamphetamine was divided into "a few smaller baggies," which is indicative of the intent to distribute. *Mercer*, 541 F.3d at 1076.  Also, no evidence of paraphernalia for personal drug

consumption was found during the investigation. *See id.* Accordingly, there was sufficient evidence for the jury to conclude that Crabbe was guilty of possession with intent to distribute.

In any event, where the defense's argument at trial "rest[s] *not* on a theory that corresponds to the requested instruction[, but rather] . . . relies on an exculpatory defense that, if believed, would lead to acquittals on both the greater and lesser charges, it is no abuse of discretion to refuse to instruct the jury on a lesser included offense." *Brown*, 26 F.3d at 120. During closing arguments, Crabbe argued that his fingerprints were not found on any of the baggies of methamphetamine found in his vehicle, no drug residue was detected on his person, and that he "[told] the truth" when he told police he did not know there was methamphetamine in the suitcase in his car. He claimed the government did not prove the elements of possession with intent to distribute and he "had no and has no idea" where the methamphetamine came from. Because Crabbe rested on an exculpatory theory -- he had no idea where the methamphetamine came from and never interacted with it -- the district court did not err in declining to give the lesser-included offense instruction when Crabbe did not rest at trial on a theory supporting the lesser-included offense. We affirm on this ground as well.

**AFFIRMED.**